**UNITED STATES of America, Appellee,**

v.

**Joseph GAMBINO and Carlo Conti, Defendants-Appellants.**

**Nos. 294, 348, Dockets 77–1336 and 77–1337.**

United States Court of Appeals, Second Circuit.

Argued Oct. 27, 1977.

Decided Nov. 21, 1977.

Roy M. Cohn and Michael Rosen, New York City (Saxe, Bacon & Bolan, P.C., and Ronald F. Poepplein, New York City, of counsel), for defendants-appellants.

Peter D. Sudler, Asst. U.S. Atty., New York City (Robert B. Fiske, Jr., U.S. Atty. and Jacob Laufer and Audrey Strauss, Asst. U.S. Attys., New York City, of counsel), for appellee.

Before FRIENDLY, GURFEIN and MESKILL, Circuit Judges.

GURFEIN, Circuit Judge.

The appellants were convicted of conspiracy,[1] violation of the Anti-Racketeering Act, 18 U.S.C. § 1962(b),[2] violation of the Consumer Credit Protection Act, 18 U.S.C. § 894,[3] and violation of the Hobbs Act, 18 U.S.C. § 1951.[4] Gambino was found guilty also of tax evasion for the years 1970–1973 and 1975.[5]

The appellants contend that there was insufficient evidence to prove a conspiracy to acquire and maintain control of the private sanitation industry in the Coop City area of the Bronx through a pattern of racketeering activity. They argue that there was insufficient evidence to warrant a conviction under Count Four, which charged that Gambino and Conti used threats and violence in order to collect an extension of credit from Peter Darminio. Specifically, they point to an alleged lack of corroboration of Darminio's testimony.

The general outline of the case indicates that Gambino and Conti had controlled certain stops for private garbage collection in the Bronx but were unable to get a carting license from the City. They arranged for Terminal Sanitation, a licensed private sanitation firm, owned by Peter and Anthony Darminio, to collect at all of the stops which Gambino had previously acquired in the Bronx. The Darminios were required to kick back to Gambino one-third of all the moneys they received from servicing the stops.

Judge Ward, sitting without a jury, found that Gambino and Conti maintained control of garbage collection in Coop City and other areas of the Bronx by threatening to kill competitors and by administering beatings. This activity included an assault on an undercover agent of the FBI who was

---

1. Count One of a 22 count indictment charged Gambino and Conti with conspiring to acquire and to maintain control of the private sanitation industry in certain parts of the Bronx through a pattern of racketeering activity in violation of 18 U.S.C. § 371, which provides in part:

   "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both."

2. 18 U.S.C. § 1962(b) provides:

   "It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce."

3. 18 U.S.C. § 894 provides in part:

   "(a) Whoever knowingly participates in any way, or conspires to do so, in the use of any extortionate means

   "(1) to collect or attempt to collect any extension of credit, or

   "(2) to punish any person for the nonrepayment thereof, shall be fined not more than $10,000 or imprisoned not more than 20 years, or both."

4. 18 U.S.C. § 1951 provides in part that

   "(a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years, or both."

5. Gambino was convicted of evading his federal income tax for the years 1970 through 1973 and 1975 in violation of 26 U.S.C. § 7201, which provides:

   "Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution."

posing as a cart man and who had solicited a stop in Coop City. Judge Ward also found that Gambino engaged in extensive loansharking activities, lending a total of $90,000 to Peter and Anthony Darminio in 1970 and 1971 and $75,000 to Peter in 1972. These loans were collected by Gambino and Conti through the use of threats and violence.

The court carefully reviewed the evidence. Ralph Torres, an employee of Gambino and Conti, was found to be a credible witness by Judge Ward. Although the credibility of Peter Darminio was in question, his testimony concerning the defendant's extortionate extensions of credit was corroborated by an exhibit in evidence bearing Gambino's handwriting, headed with the word "Peter" and containing a column of figures and certain calculations. Judge Ward further found that Conti, who was collecting the payments, threatened and beat Darminio from time to time when he was late in making payments.

In July of 1973 one Bernard Ettinger, who had sold Terminal to the Darminios in 1968 and who had not been paid in full in connection with the sale, complained in writing to the New York City Department of Consumer Affairs, requesting that the department see to it that the Darminios fulfilled their obligations to him before the department approved any sale of stops registered to Terminal. Shortly thereafter, Conti visited Ettinger at his office, slapped Mr. Ettinger on the face, and told him that he had better not complain to the department.

On an earlier occasion when Ettinger had threatened to foreclose on Anthony Darminio's home, on which he held a mortgage, Mr. and Mrs. Darminio had asked Mr. Gambino for assistance, and Gambino replied "Don't worry about it. I'll send Carlo Conti to straighten it out." In 1974, Ettinger pressed Darminio for payment, which was then a balance of $90,000. A meeting was arranged. Gambino came with Darminio. Gambino said that if Ettinger would settle, Darminio could sell some stops and there would be some stops left over so that Peter Darminio could continue his route. Ettinger agreed to settle for $40,000. One Joseph Perillo, who was also present at the meeting, indicated that he was prepared to purchase some stops from Terminal but did not have money with him for a down payment. Gambino gave Perillo $5,000, which Perillo, in turn, gave to Ettinger. The court found Ettinger to be a highly credible witness.

In November 1975, Terminal entered into a contract with P & S Sanitation, a newly organized company, to take over Terminal's stops. The court found that Gambino was active in P & S.

In the Fall of 1976, the FBI incorporated American Automated Refuse & Waste Removal, Inc., and set up an office in the Bronx. They bought trucks and a winch, the winch being shipped from Texas, and arranged to dump the garbage in New Jersey. They then began soliciting garbage collection accounts, including Harry's Service Station which they knew was being serviced by P & S Sanitation. On December 1, 1976, Harry's entered into an agreement with American Automated, the Government company. American Automated arranged to drop off a container at Harry's to store garbage which would be collected by Automated. Shortly thereafter, Conti telephoned American Automated and came to the office. He threatened to kill the person seated at the desk, who called himself Wayne Dacon but who was in fact an agent of the FBI named Walter Wayne Orrell. Conti's statement to Orrell included a threat to throw the agent out of the window. This conversation was tape-recorded and the tape was received in evidence. Conti indicated that anything new that opened up in Coop City was his. There were two places on the tape where a crunching sound was audible. Agent Orrell testified that Conti punched him. The evidence established that Conti acted frequently at the behest of Gambino, that both men conspired to acquire and maintain control of the private sanitation industry in Coop City and other areas of the Bronx through a pattern of racketeering activity and that they in fact carried out the pur-

pose of the conspiracy, that both men obstructed commerce by extorting payments from Terminal Sanitation and its principals, and that Conti attempted to obstruct commerce by assaulting and threatening to kill persons associated with American Automated, Inc.

■ These findings of the experienced trial judge cannot lightly be set aside. Nor do we see any reason for so doing. We hold that there was sufficient evidence to sustain the convictions on the counts upon which Conti was convicted.

■ The claim that there was insufficient evidence to sustain the conviction on Count Four which charged the use of extortionate means to collect the $75,000 loan to Peter Darminio must be rejected. There can be no doubt that Section 894 is violated when force and violence are used to collect an extension of credit. *United States v. Natale*, 526 F.2d 1160, 1165 (2 Cir. 1975), *cert. denied*, 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976). When Peter Darminio was slow in making payments, he was threatened and beaten by Conti on several occasions and was struck and threatened on one occasion by Gambino himself. Anthony corroborated Peter Darminio's testimony about the beatings, and Torres also corroborated the testimony, having witnessed some of the beatings by Conti.

■ The defendants contend that their convictions under Count Three for violation of the Hobbs Act cannot stand because the payments of money which they allegedly extorted from Terminal Sanitation were a property right belonging to Gambino who, according to the Government's theory, always owned the Coop City route. Defendants contend that one cannot extort what is rightfully his. The answers are several: First, this argument was never made below, and it has therefore been waived for purposes of appellate review. *United States v. Indiviglio*, 352 F.2d 276 (2 Cir. 1965) (en banc), *cert. denied*, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966). The reason this argument was not raised below is obviously that Gambino and Conti would be in a better position with regard to the tax counts if they never owned the Coop City stops after they transferred them to Terminal. Secondly, what the Darminios were required to pay was not one-third of the proceeds they actually received from their customers, for when their customers were late in payment, the Darminios were nevertheless compelled to pay the one-third to Gambino and Conti. The Darminios had a right to solicit the stops without paying for the right. *United States v. Tropiano*, 418 F.2d 1069, 1076 (2d Cir. 1969), *cert. denied*, 397 U.S. 1021, 90 S.Ct. 1258, 25 L.Ed.2d 530 (1970). The method of enforcing appellant's claim to control "their" stops is evidenced by the assault upon Mongelli who solicited an account in Coop City, and was beaten on the head with a metal object by Conti to discourage his initiative. The law does not favor beatings as a means of controlling markets.

■ The argument that there was only a casual effect on interstate commerce and that this vitiates the Hobbs Act conviction is unsound. The statute itself says that interference or attempted interference with interstate commerce "in any way or degree" is prohibited even if the effect is only minimal. *See Tropiano, supra*, 418 F.2d at 1076; *United States v. Augello*, 451 F.2d 1167, 1169–70 (2d Cir. 1971), *cert. denied*, 405 U.S. 1070, 92 S.Ct. 1518, 31 L.Ed.2d 802 (1972). As we said in *Augello, supra*, 451 F.2d at 1169–70:

"Given the sweeping power of Congress under the commerce clause, *Katzenbach v. McClung*, 379 U.S. 294, 305, 85 S.Ct. 377, 13 L.Ed.2d 290 (1964), particularly evident in the Hobbs Act, *Stirone v. United States*, 361 U.S. 212, 215, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), it is enough that the extortion 'in any way or degree,' 18 U.S.C. § 1951(a), affects commerce, though its effect be merely potential or subtle [citing cases]."

■ The next point raised by appellants is that the Government contrived to create federal jurisdiction when it formed American Automated for the purpose of trapping the suspected racketeers. They rely, of

course, on *United States v. Archer*, 486 F.2d 670, 683 (2d Cir. 1973), in which the court spoke of a "federally provoked incident of local corruption." The *Archer* case is clearly distinguishable. There specific phone calls were purposely made in order to create an interstate element for what would otherwise have been merely a local crime. In the original opinion, 486 F.2d at 678 and in the opinion denying the Government's petition for rehearing in *Archer*, we specifically declined to decide whether the court could or should dismiss the prosecution as an abuse of federal power. 486 F.2d at 684. We based our decision on the insufficiency of uncontrived use of interstate and foreign facilities. Here, on the contrary, the activities of American Automated were necessarily wedded to interstate commerce. It obtained equipment from Texas and it legitimately arranged to dump its garbage in New Jersey where the rates were cheaper. No one asked Conti to threaten the FBI agent or to hit him on the head; Conti could have acquiesced in allowing American Automated to take the Harry's Service Station account. There is no entrapment in such a situation, any more than the flashing of a roll of bills on a public street is the entrapment of an alert robber.

Moreover, *Tropiano* established that the garbage collection business in a town in Connecticut was sufficiently related to interstate commerce to support a Hobbs Act violation. Since the garbage collection business in the Bronx was sufficiently related to interstate commerce in like manner, it was really unnecessary for the federal agents actually to buy machinery or to dump garbage outside the state. The ruse itself was not objectionable, and the allegedly spurious out-of-state involvement was in any event, irrelevant.

■ The last point raised is that Conti should not have been convicted of attempted extortion under Count Five because the American Automated employee, being an FBI agent, really could not be put in fear. The short answer is that Conti was not convicted of a completed extortion, but only of an attempted extortion. We do not have

to determine whether the agent can be put in fear sufficiently to make out the crime of extortion. To prove attempted extortion, it is necessary to prove only an attempt to instill fear. *Carbo v. United States*, 314 F.2d 718, 740–41 (9th Cir.), *cert. denied*, 377 U.S. 953, 84 S.Ct. 1625, 12 L.Ed.2d 498 (1963). That the victim may be made of unusually stern stuff or that he may, in fact, be a federal agent is quite irrelevant to a permissible finding that there has been an attempt to instill fear.

The judgment of conviction of each appellant is affirmed in all respects.