UNITED STATES of America

v.

James Raymond FAISON, Appellant.

No. 81–2010.

United States Court of Appeals, Third Circuit.

Argued March 29, 1982.
Decided May 14, 1982.

---

David A. Ruhnke (argued), Asst. Federal Public Defender, District of New Jersey, Newark, N. J., for appellant.

W. Hunt Dumont, U. S. Atty., Newark, N. J., for appellee; Kenneth Ballen (argued), Asst. U. S. Atty., Newark, N. J., on brief.

Before GIBBONS, SLOVITER and BECKER, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

James Raymond Faison, convicted of violating the "wire fraud" statute, 18 U.S.C. § 1343 *et seq.* (1976), and of transporting stolen securities in interstate commerce, 18 U.S.C. § 2314 (1976), contends that the court erred in refusing to dismiss the wire fraud counts of the indictment because the government manufactured the federal jurisdictional element and in denying his motion for a new trial. We vacate the judgment and remand for further proceedings.

I.

In urging that the government artificially federalized the crimes in this case Faison relies on the Second Circuit decision in *United States v. Archer*, 486 F.2d 670 (2d Cir. 1973). In *Archer*, federal agents were

investigating the nature and extent of corruption in the New York criminal justice system. In their zeal, these agents went beyond any proper investigatory role, lying to New York police and committing perjury before New York judges and grand juries. To bring the criminal activities they discovered within the ambit of the Federal Travel Act, 18 U.S.C. § 1952, they dispatched an informant to Newark, New Jersey, to place telephone calls to suspects in New York. The Second Circuit, clearly dismayed at the government's "arrogant disregard for the sanctity of the state judicial and police processes," *id.* at 677, held the investigators had artificially injected the federal government in a matter of state concern. The telephone calls were found insufficient to sustain federal jurisdiction over the offenses because they were made only to manufacture interstate contact. The court held that the defendants had not used interstate channels of communication in a manner sufficiently meaningful to be subject to prosecution under federal statutes intended to prevent abuse of those channels in the furtherance of local crime.[1]

The evidence suggests that Faison, a New Jersey resident, operated an auto-body shop in New York City. In August 1980, he decided to move his business to New Jersey, whereupon he started negotiating with one Cal Mancuso to lease Mancuso's New Jersey trucking terminal. Meanwhile, defendant had obtained blank checks stolen from the American Foundation for the Blind whose offices are also in New York City. In due time, defendant asked Mancuso to help him cash these illegal checks in a scheme to raise money for both men. The two discussed their plan by meetings in New Jersey and by telephone conversations between Mancuso in New Jersey and Faison at his place of business in New York. Mancuso then made contact in New Jersey with Michael Selvanto, who was thought to have the necessary connections to cash the illicit checks. Selvanto, in turn, notified the FBI with whom he thereafter cooperated by recording his conversations with the conspirators and by keeping the FBI informed of Faison's and Mancuso's activities.

On securing Selvanto's agreement to help, Mancuso, from New Jersey, telephoned Faison in New York to tell him the good news. A few days later, Mancuso called defendant, again in New York, to ask that the checks be brought over. Faison personally delivered the stolen checks to Mancuso in New Jersey. Mancuso, copying from a cancelled check provided by Faison, forged the Foundation's signature on the blanks and turned the checks over to Selvanto.

Selvanto soon informed Mancuso that there was a problem with the bank clearing the funds and that $1,500 would have to be paid to a banker to facilitate matters. Mancuso immediately called Faison in New York to relay the message. Selvanto, Mancuso and Faison then met at Mancuso's to deal with their contretemps. They reached a solution whereby Selvanto would give his personal check to pay off the corrupt banker. Before leaving, Faison gave Selvanto his business telephone number in New York so that Selvanto could reach him there when the monies from the cashed checks became available.

A few days later Selvanto called Faison at the auto-body shop in New York to arrange for the defendant to meet the corrupt banker who would give defendant his share of the take. This call was placed from the FBI offices in New Jersey, rather than Selvanto's home, and was recorded. Selvanto called Faison in New York the next day, again from the FBI offices in New Jersey, to finalize details. Faison went to that meeting in New Jersey and was arrested.

In support of his *Archer* contention Faison relies chiefly on the two calls made by Selvanto from the FBI office. The analysis made by Judge Friendly in the *Archer* case does not apply, however, because on this record we are not dealing with a matter of

---

1. The Second Circuit has since read *Archer* narrowly. *See generally United States v. Herrera,* 584 F.2d 1137 (2d Cir. 1978); *United States v. Gambino,* 566 F.2d 414 (2d Cir. 1977), *cert. denied,* 435 U.S. 952, 98 S.Ct. 1580, 55 L.Ed.2d 802 (1978).

local interest being artificially federalized by federal encouragement of the use of facilities of interstate commerce which would not otherwise have been used. Faison's place of business is in New York, yet his dealings with the conspirators were in New Jersey. The telephone communications made from New Jersey to Faison in New York were at his behest. He gave Selvanto and Mancuso his work number with instructions to call as the news broke. Use of the interstate telephone lines during working hours facilitated and shaped the crimes. Faison took advantage of interstate communication to effectuate his plan and coordinate the various players' actions. Moreover, we are not troubled that Selvanto placed the telephone calls from the office of the FBI in New Jersey and that these were the calls alleged in the indictment. Selvanto was carrying his activities within New Jersey, so any calls to Faison would have emanated from that state. That he chose to call from the FBI office rather than from his home or a phone booth does not vitiate the interstate nature of the communication. There was no sham on the government's part. Thus we reject the contention that the wire fraud counts should have been dismissed.

## II.

A multi-count indictment was returned against Faison and Mancuso. Count One charged them with conspiring to violate 18 U.S.C. § 1343—the "wire fraud" statute. Counts Two and Three charged them with substantive wire fraud. Count Four charged defendant alone with the interstate transportation of stolen securities. 18 U.S.C. § 2314.

Faison's first trial started on January 21, 1981. Mancuso, who had entered a guilty plea on Count One of the indictment pursuant to plea bargaining, testified as a government witness. The jury was unable to reach a verdict, and the District Court declared a mistrial. A second trial began on March 17, 1981. By this time Mancuso was in the hospital for treatment of his heart problem. Defense counsel requested an adjournment of the trial so that the jury would have the benefit of Mancuso's live testimony and live cross-examination. This request was repeated throughout the trial. The District Court, however, refused to adjourn the trial and instead permitted the introduction of the testimony which Mancuso gave at the first trial. On March 25, the jury found Faison guilty of all counts.

Faison argues that the admission of Mancuso's testimony violated his sixth amendment confrontation rights. Alternatively he urges that the court improperly applied Fed.R.Evid. 804(a)(4), or abused its discretion in failing to grant a continuance to determine whether Mancuso would be available in the near future.

Rule 804(b)(1) of the Federal Rules of Evidence excludes from the hearsay rule:

testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination

if the declarant is unavailable as a witness. Fed.R.Evid. 804(a) in turn defines unavailability to include, inter alia, "situations in which the declarant . . .

(4) is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity.

Fed.R.Evid. 804(a)(4). The District Court determines his unavailability, subject to appellate review for abuse of discretion.[2] See United States v. Amaya, 533 F.2d 188 (5th Cir. (1976), cert. denied, 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977)). See generally, Howard v. Sigler, 454 F.2d 115, 118 (8th Cir.), cert. denied, 409 U.S. 854, 93

---

2. This determination involves mixed questions of law and of fact. As to the factual findings, the appropriate standard for review is the clearly erroneous test.

S.Ct. 188, 34 L.Ed.2d 98 (1972). *See also United States v. Bell,* 500 F.2d 1287 (2nd Cir. 1974).

In this instance, the trial court decided that Mancuso, who was in the hospital suffering from a heart attack, was unavailable. The court therefore admitted Mancuso's earlier testimony and refused Faison's request for an adjournment so that Mancuso could be heard live. There is no question Mancuso was too sick to testify at the time of trial. That is not, however, dispositive. Our inquiry, instead, is whether the district court properly exercised discretion in not adjourning the trial for a reasonable period to afford the witness enough time to recover from an illness which might be temporary, and thus to be available once more for live testimony.

There is evidence in this record that a decision not to adjourn might well have been within the parameters which we must accord to trial judges in their exercise of discretion in matters such as this. On the date that the trial court made its determination not to adjourn, the court had before it information that Mancuso was about to undergo coronary bypass surgery and would not be available to testify for at least four to five weeks after the surgery. Tr. of Hearing of March 10, 1981 at 2–3. This information was confirmed in the following letter from Mancuso's physician:

> Basically, the patient had coronary angiography this past weekend. In addition to his prior cardiac defects, he now has involvement of the left main stem artery. This means a death rate of 20%/year with medical therapy alone. Surgery, if chosen and successful, usually reverts this figure to 3–4%/year in ideal candidates. He has chosen open heart surgery. As of 3/9/81, he has been scheduled for such with Dr. Hutchinson at St. Luke's Hospital in New York City. Date of admission is 3/17/81, with surgery scheduled for 3/20/81. In the interim, he will be discharged to bed rest at home pending this event. Under ideal circumstances, mortality is estimated at 1–2%. However, with age, co-existing disease states, and prior cardiac insults, we would estimate a 4–8% mortality rate for this patient.

Letter from Peter H. Shershin, M.D. to Michael M. Milner (March 10, 1981). Although the United States Attorney expressed his expectation that Mancuso would be available to testify in four to five weeks, the trial court had no assurance that even if Mancuso successfully underwent surgery, his physician would accede to his appearance at trial in four or five weeks in light of his heart condition. Appearance at a major criminal trial, particularly when a witness, such as Mancuso, was personally implicated in the events, must be an emotional and traumatic experience. The trial court may have been aware of the frequency with which requests to excuse appearance of a witness are made and granted on medical evidence less compelling than that which seemed likely to have been presented on behalf of Mancuso were the trial adjourned. Thus, the trial court's refusal to adjourn may have been warranted, particularly when the Federal Rules of Evidence explicitly provide that in such a situation prior reliable testimony is admissible in lieu of live testimony.

However the court did not articulate any weighing of the relevant considerations, and the record also shows that the prime consideration relied upon in determining whether to grant the adjournment was uncertainty as to whether the Speedy Trial Act would preclude a subsequent trial of this defendant. Although the Speedy Trial Act provides that delay is excludable time where a witness is unavailable and that "an essential witness shall be considered unavailable whenever his whereabouts are known but his presence for trial cannot be obtained by due diligence or he resists appearing at trial or being returned for trial," 18 U.S.C. § 3161(h)(3)(B), the court indicated some uncertainty that this provision would cover Mancuso's situation. The court compared the language of Rule 804(a), which defines unavailability to include situations in which a declarant "is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity," with the above language of the Speedy Trial Act and noted

that Congress used different language in the Speedy Trial Act. Tr. of Hearing of March 10, 1981 at 5. Referring to his concern that the Speedy Trial Act exception might not be applicable, the court said "I think it's too risky. I see no point to conducting a trial on the assumption that time is excludable when we don't know the answer reliably." *Id.* at 12. The court again referred to this specific risk in refusing to grant the adjournment and deciding to mark the case ready: "I'm not going to take chances with it. I think we are going to mark this case ready hold from day to day." *Id.* at 13.

■ Both the government and the defendant agreed at trial that the illness of Mancuso at the time in question rendered him unavailable within the meaning of the Speedy Trial Act and the consequent delay would have been excludable time within the meaning of the Act. We agree that a witness who cannot testify because of then existing temporary physical or mental illness or infirmity is unavailable for purposes of calculation of time under the Speedy Trial Act. Because the trial court was uncertain whether this court would so interpret the statute, its exercise of discretion in refusing to grant the adjournment was based, at least in part, on an erroneous understanding of the applicable law.

■ The trial judge's discretion in granting an adjournment for witnesses unavailable due to illness must be guided on the one hand by the policy of favoring live testimony and confrontation in the presence of the factfinder and, on the other, by the policy, manifested in the Speedy Trial Act, 18 U.S.C. § 3161 (1976), of prompt disposition of criminal trials.[3] Moreover, since witness availability affects the court's ability to manage its cases, the trial court's decision to refuse an adjournment and to

admit prior testimony must be treated with respectful deference. In exercising discretion a trial judge must consider all relevant circumstances, including: the importance of the absent witness for the case; the nature and extent of cross-examination in the earlier testimony; the nature of the illness; the expected time of recovery; the reliability of the evidence of the probable duration of the illness; and any special circumstances counselling against delay. It is essential for appellate review that the district judge elaborate his considerations and explain his reasons for admitting prior testimony rather than granting a reasonable continuance. Such an analysis on the record would permit us to review the soundness of the district court's exercise of discretion, and to insure that the relevant variables were considered.

■ Applying the above standards to this record, we hold that the district court abused his discretion by not adjourning Faison's trial for a reasonable period.[4] Here Mancuso was an important witness against defendant. The live cross-examination of such a witness before a jury, even if not constitutionally mandated, ought not to be lightly dispensed with. The fact that the first trial yielded a hung jury suggests that the evidence against defendant had weaknesses. The district court should have been especially careful that the omission of live cross-examination of Mancuso before the new jury not tip the balance in a close case against defendant.

■ Since the court's error—one of nonconstitutional dimensions, deprived Faison, at most, of the opportunity to present Mancuso's testimony live, an outright reversal for a new trial is inappropriate without further inquiry. By now Mancuso has undergone surgery. Whether he has recovered sufficiently to testify is not known. If

---

**3.** The public, as well as the defendant, has an interest in speedy justice. 18 U.S.C. § 3161; *Hilbert v. Dooling*, 476 F.2d 355, 357–58 (2d Cir.) (*en banc*), 414 U.S. 878, 94 S.Ct. 56, 38 L.Ed.2d 123 (1973). Thus Faison's agreement to waive any speedy trial claims, while a significant factor in the exercise of discretion, is not dispositive.

**4.** We emphasize that the adjournment should only occur if the witness is expected to recover sufficiently to testify within a reasonable period. Our mandate is not that an adjournment be allowed merely to wait indefinitely and see whether a witness recovers.

his health is such that he would be unavailable at a new trial, granting a new trial would serve no purpose. Faison already had a trial at which Mancuso's prior testimony was read to the jury. If he could testify at a new trial, however, Faison should be afforded the opportunity to have him do so. Thus the case will be remanded to the trial court for appropriate proceedings to determine whether Mancuso would now be available to testify. If he would be, the trial court is directed to grant a new trial.[5]

## III.

The judgment appealed from is vacated and the case remanded for further proceedings consistent with this opinion.

EDWARD R. BECKER, Circuit Judge, concurring:

The majority holds that the trial court abused its discretion under Federal Rule of Evidence 804(a)(4) when it admitted Mancuso's prior testimony, and does not reach Faison's assertion that the trial court's action infringed rights secured to him by the Sixth Amendment. While I endorse the majority's discussion of the abuse of discretion question,[1] I write separately because I

**5.** Faison also argues that the search following arrest of the car he was driving was without proper consent and, therefore, that any resulting evidence ought to be suppressed. We review the district court's findings as to the voluntariness of defendant's consent by the clearly erroneous standard. *United States v. Molt*, 589 F.2d 1247, 1251 (3d Cir. 1978). The court decided that the consent was voluntary. Since that finding is not clearly erroneous, the materials seized from the car will be admissible on retrial if it is ordered.

**1.** I also agree with the Court's disposition of the *Archer* and illegal search claims.

**2.** I note in this regard that the cases cited by the majority to support the proposition that trial court determinations of unavailability are subject to review for abuse of discretion, typescript op. at 6, are cases dealing with witness unavailability under the Confrontation Clause and not under the Federal Rules of Evidence. *United States v. Amaya*, 533 F.2d 188 (5th Cir. 1976), *cert. denied sub nom. Flores-Amaya v. United States*, 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977), held that Confrontation

disagree with the conceptual framework of that discussion. I believe that this case presents not Federal Rules of Evidence but Confrontation Clause issues.

My disagreement is based on my understanding that Rule 804(a)(4) requires a more exacting showing of unavailability when testimony is offered against the accused in a criminal prosecution precisely because the Confrontation Clause demands it. As Professors Saltzburg and Redden observe:

It is very likely that the confrontation clause will be read to require that the defense be granted a reasonable postponement when a witness is ill and unable to testify for the prosecution and the alternative to a postponement is introduction of hearsay.... Such confrontation rulings could be made even if Rule 804 is satisfied, since the Constitution may be more protective than the Rule.

S. Saltzburg & K. Redden, *Federal Rules of Evidence Manual* 600 (2d ed. 1977). Other commentators are in accord. *See* E. Cleary, *McCormick's Handbook of the Law of Evidence* § 253, at 610 (2d ed. 1972); 11 J. Moore & H. Bendix, *Moore's Federal Practice* § 804.03[4] (2d ed. 1976); 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 804(a)[01], at 804–39 (1979).[2]

Clause rights were not violated by the admission of the prior testimony of a witness who had lost his memory. The Fifth Circuit in *Amaya* reaffirmed its earlier ruling in *Peterson v. United States*, 344 F.2d 419 (5th Cir. 1965), that the Confrontation Clause requires more than a showing of mere temporary unavailability but demands a showing that it is reasonably likely that the witness "will never be able to attend the trial." *Id.* at 425. Similarly, *United States v. Bell*, 500 F.2d 1287 (2d Cir. 1974), involved a Confrontation Clause challenge to the admission of prior testimony of an identifying witness against the accused. Though the Second Circuit disagreed with some of the implications of *Peterson* and found that the trial court had not abused its discretion, the court did not suggest that it was not considering a constitutional question. Finally, *Howard v. Sigler*, 454 F.2d 115 (8th Cir.), *cert. denied*, 409 U.S. 854, 93 S.Ct. 188, 34 L.Ed.2d 98 (1972), decided that the Confrontation Clause was not violated where the accused was not afforded the right to cross-examine an ill witness's doctor.

The factors that the majority articulates for consideration by the trial court emanate from the Confrontation Clause and must be considered in light of its purposes. The Supreme Court has said that the Confrontation Clause expresses "a preference for face-to-face confrontation at trial." *Ohio v. Roberts*, 448 U.S. 56, 63, 100 S.Ct. 2531, 2537, 65 L.Ed.2d 597 (1980). The primary interest which it secures is the defendant's right to cross-examine the witnesses against him, but the opportunity for the jury to evaluate the demeanor of the witness is also an important interest. *Mattox v. United States*, 156 U.S. 237, 242–43, 15 S.Ct. 337, 339, 39 L.Ed. 409 (1895) (importance of "compelling [the witness] to stand face to face with the jury in order that they may look at him, and judge by his demeanor ... whether he is worthy of belief"); *Government of Virgin Islands v. Aquino*, 378 F.2d 540, 548 (3d Cir. 1967) ("Demeanor is of the utmost importance in the determination of the credibility of a witness.")

It is not that Rule 804(a)(4) rejects these values; rather it is that Rule 804(a)(4) is strengthened by them in a criminal case. The Federal Rules of Evidence apply in civil as well as criminal cases, and, in criminal cases, to the evidence presented by the accused as well as the prosecution. It seems to me that the Rules of Evidence require flexibility, and that they must be read to afford the trial court more discretion than does the Confrontation Clause. What is at issue in this case is the more confining but less widely applicable dictate of the Constitution. Certainly considerable deference must be given to the trial court's determination of unavailability even under the Confrontation Clause. I would hold, however, that it is the Confrontation Clause and not Rule 804(a)(4) that requires the trial court to make specific findings about all relevant circumstances, *see* slip op. at 7, and that it is the Confrontation Clause that

requires this Court to vacate and remand for abuse of discretion.[3]

---

**3.** The majority obviously believes it improvident to base its decision on constitutional grounds and emphasizes the nonconstitutional basis of its holding. But because abuse of discretion analysis is appropriate under both Rule 804(a)(4) and the Confrontation Clause, *see* note 2 *supra*, I do not believe that the constitutional approach requires a different result in this case. Accordingly, I join the majority's decision to vacate the judgment and to remand for further proceedings consistent with its opinion.