# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-KA-00970-SCT

*CHARLES DALE EARL*

*v.*

*STATE OF MISSISSIPPI*

### ON PETITION FOR REHEARING

| | |
|---|---|
| DATE OF JUDGMENT: | 8/13/92 |
| TRIAL JUDGE: | HON. JOHN LESLIE HATCHER |
| COURT FROM WHICH APPEALED: | COAHOMA COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHARLES E. WEBSTER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  DEWITT T. ALLRED, III |
| DISTRICT ATTORNEY: | NA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 4/18/96 |
| MOTION FOR REHEARING FILED: | 1/30/96 |
| MANDATE ISSUED: | 4/25/96 |

**EN BANC.**

**BANKS, JUSTICE, FOR THE COURT:**

¶1. The petition for rehearing is denied. The original opinion in this case is withdrawn and this opinion is substituted therefor.

¶2. Here we answer the question of whether a witness who is not present due to a doctor's appointment has an "existing physical illness" and is thus "unavailable" under M.R.E. Rule 804(a)(4), where the offering party presents no medical witnesses or affidavits in support. We hold that she is not unavailable under the rule. We consider, however, that error in admitting the witness's prior testimony was cumulative, thus harmless. Earl's claim regarding an alleged deficiency in his indictment for failure to charge him as an habitual offender "against the peace and dignity of the State of Mississippi," based on *McNeal v. State,* is without merit. Accordingly, we affirm.

I.

¶3. Defendant Charles Dale Earl was charged and tried with an alleged co-felon for the crime of burglary. Earl was found guilty, but was granted a new trial because the court failed to grant a severance. Earl's

second trial resulted in a mistrial, due to a hung jury. In Earl's third trial, he was convicted by a Coahoma County jury for the crime of burglary. Earl was sentenced to seven years imprisonment with no chance for parole.

¶4. Before the selection of the jury in Earl's third trial, he moved to preclude the prosecution from using the previous testimony of Edith Jacobson from a transcript. The court inquired as to whether a subpoena for Jacobson had been issued. The State informed the court that no subpoena had been issued. The State indicated that it did not know that it needed to be prepared for trial on that day. The State presented Jackie Johnson, their victims's assistance coordinator, to testify as to what efforts were made by the State to procure Jacobson for the third trial. Johnson works for the District Attorney's office and was the only witness presented on this issue. Johnson testified that Jacobson had testified in Earl's two previous trials. According to Johnson, Jacobson had left town after the last trial to visit her son in New Jersey. Johnson made numerous attempts to contact Jacobson after her return from New Jersey. To the question as to whether Johnson attempted to determine if Jacobson would be available for trial that day or the next two days, Johnson replied that Jacobson had informed her that she would not be available that day or the next two. The reason given Johnson was that Jacobson had a doctor's appointment in Memphis and would be gone Monday, July 21, 1992, and would not return until after Wednesday, July 23, 1992. Johnson indicated that Jacobson told her that she had made the appointment "some time ago." Johnson also indicated that Jacobson had not been feeling well and had stomach problems the previous Tuesday. Johnson then testified that she had tried to contact Jacobson that day, but was unsuccessful.

¶5. The prosecuting attorney, Laurence Mellen, then told the court that Jacobson had been ill the previous Tuesday, and that he was aware that she would not be present the day of the third trial or the next two days. Mellen then indicated that he did not expect this case to go back to trial on any of these days; therefore, he was hesitant to issue a subpoena that would have "knocked her out of her appointment." Before the court ruled on this issue, the State moved for a continuance due to their absent witness. The Court denied the continuance. The court then denied Earl's motion to preclude Jacobson's prior testimony relying on Rule 804(a)(4) and 804(b). From this Earl appeals.

II.

a.

¶6. Earl's first contention of error is that the trial court erred in allowing the State to introduce the transcript of Edith Jacobson's prior testimony in his third trial instead of having her testify live. Rule 804(a)(4) allows the admission of prior testimony of an unavailable witness when the unavailability is due to "death or then existing physical or mental illness or infirmity."

¶7. This Court has yet to decide what is required of the trial court when it is determining whether a witness is unavailable under 804(a)(4). The prosecution bears the burden of demonstrating "unavailability" before a witness' out of court statement may be admitted. ***Ohio v. Roberts***, 448 U.S. 56, 74-75, (1980). In ***Barber v. Page***, 390 U.S. 719, 721 (1968), the U.S. Supreme Court stated the importance of the Confrontation Clause:

> Many years ago this Court stated "the primary object of the [Confrontation Clause of the Sixth Amendment] . . . was to prevent depositions or ex parte affidavits . . . being used against the prisoner in lieu of a personal examination and cross-examination of the witness in which the accused has an

opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief."*Mattox v. United States*, 156 U.S. 237, 242-243, 15 S.Ct. 337, 339-340, 39 L.Ed. 409 (1895). More recently, in holding the Sixth Amendment right of confrontation applicable to the States through the Fourteenth Amendment, this Court said, "There are few subjects, perhaps, upon which this Court and other courts have been nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Pointer v. Texas*, 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed. 2d 923 (1965). *See also* **Douglas v. Alabama**, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed 2d 934 (1965).

*Barber*, 390 U.S. at 721. The Court in *Barber* went on to state "there has traditionally been an exception to the confrontation requirement where a witness is unavailable and has given testimony at previous proceedings against the same defendant which was subject to cross-examination by the defendant." *Barber*, 390 U.S. at 722. "The exception has been explained as arising from the necessity and has been justified on the ground that the right of cross-examination initially afforded provides substantial compliance with the purposes behind the confrontation requirement." 390 U.S. at 722, (citations omitted).

¶8. In *United States v. Quinn*, 901 F.2d 522 (6th Cir. 1990), the Sixth Circuit analyzed whether the trial court had properly admitted prior testimony of a witness that was not present. The Court in *Quinn* opined:

> In *Roberts*, the Supreme Court articulated a two pronged test for determining the admissibility of a declarant's out of court statement. First, in the "usual case (including cases where prior cross-examination has occurred), the prosecution must either produce, or demonstrate the unavailability of, the declarant whose statement it wishes to use against the defendant." 448 U.S. at 65, 100 S.Ct. at 2538 (citations omitted). The second prong, which only "operates once a witness is shown to be unavailable," involves an inquiry into a statement is accompanied by adequate "indicia of reliability." 448 U.S. at 66, 100 S.Ct. at 2539 (quoting *Mancusi v. Stubbs*, 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293 (1972)). The Supreme Court has stated that "[r]eliability can be inferred without more in a case where evidence falls within a firmly rooted hearsay exception." *Roberts*, 448 U.S. at 66, 100 S.Ct. at 2539.

*Quinn,* 901 F.2d at 527. In *Burns v. Clusen,* 798 F.2d 931 (7th Cir. 1986), the court was faced with a trial court's decision that a witness was unavailable due to an "existing mental illness," pursuant to Rule 804(a)(4). In *Burns*, the court opined that "[t]he burden of proving the unavailability of the witness rests upon the party offering the prior testimony. If there is possibility, albeit remote, that affirmative measures might produce the declarant, the obligation of good faith may demand their effectuation." *Id*. at 937 (quoting *Ohio v. Roberts*, 448 U.S. at 74). The court in *Burns* also stated that "[t]he lengths to which the prosecution must go to produce a witness is a question of reasonableness." *Id*. at 937 (quoting *California v. Green*, 399 U.S. 149, 189 n. 22, (1970)). In *United States v. Faison*, 679 F.2d 292 (3rd Cir. 1982), the third circuit opined that:

> "in exercising discretion a trial judge must consider all relevant circumstances, including; the importance of the absent witness for the case; the nature and extent of cross-examination in the earlier testimony; the nature of the illness; the expected time of recovery; the reliability of the evidence of the

probable duration of the illness; and any special circumstances counseling against delay."

*Id*. at 297.

¶9. Earl questions the determination that Jacobson was unavailable, and not the reliability of the prior testimony. Based on the authorities cited above, the prosecution has the burden to show that the witness is unavailable. The prosecution also must show that it made a good faith effort to obtain the witness; this is true even though unavailability is due to a physical illness. The trial court relied solely on the testimony of the State's victims assistance coordinator and the word of the prosecutor. There were no medical witness presented or affidavits that would have allowed the court to determine if Jacobson could not be present. To the contrary, it appears that Jacobson was well enough to travel to New Jersey and to Memphis. Unavailability due to a physical illness is more than a conflict of schedule due to a doctor's appointment. The cases cited above highlight the importance of a defendant's right to confront a witness and also for the jury to observe a witness's demeanor. It is amazing how credible one looks on paper in contrast to in person. The trial court failed to make an analysis as mentioned in *Faison*, 679 F. 2d 292, 297. Furthermore, it appears that the State did not make a "good faith" attempt to have Jacobson present. The State argues that since the unavailability was due to an illness, it is not required to issue a subpena for the witness. While this may have been true had the State presented a medical witness or affidavits verifying that a subpoena would be futile, there is not enough to show that they made a good faith effort as required by *Barber, supra*. The State has failed to lay a proper foundation and the trial court abused its discretion, thus committing error.

¶10. This Court is now once again confronted with the familiar situation where, the trial court and/or State commits error that violates a defendant's constitutional right and the State now argues that it was harmless error. The Supreme Court has held that a violation the Confrontation Clause is subject to "harmless error" analysis. *Delaware v. Van Arsdall*, 475 U.S. 673 (1986). In *Van Arsdall*, the Supreme Court stated the appellate review that should be utilized as:

> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Van Arsdall*, 475 U.S. at 684. (Citations omitted). Jacobson's prior testimony was cumulative, in that Jacobson's testimony was that she was the owner of the building to which Rosa Wright also testified, and that she sustained considerable expense due to the damage caused by the burglary, as confirmed by the testimony of Trinda Williams, Elnora Matthews, Officer German, and Rosa Wright. The only part of Jacobson's testimony that was not cumulative is that she did not authorize anyone but the renters to enter the house. Rosa Wright, who was the renter of the premises, testified as well that she did not give anyone permission to be on the premises. The State argues that Jacobson's testimony is irrelevant to the defense that was used in trial, in that the defendant alleges that he was not at the scene at all. In light of this and the cumulative testimony this Court finds the admission of Jacobson's prior testimony is harmless.

b.

¶11. Earl next claims that his conviction as a habitual offender should be voided. Earl relies on *McNeal v. State*, 658 So. 2d 1345 (Miss. 1995), where this Court voided the habitual offender portion of an indictment because it appeared subsequent to the phrase "against the peace and dignity of the State of Mississippi" in violation of Section 169 Mississippi Constitution. Section 169 reads as follows:

> The style of all process shall be "The State of Mississippi" and all prosecution shall be carried on in the name and by authority of "The State of Mississippi," and all indictments shall conclude "against the peace and dignity of the State."

*McNeal* is distinguishable. In that case the only reference to an habitual offender charge on the face of the main body of the indictment was a reference to Miss. Code Ann. (1972) § 99-19-81. Earl's indictment in contrast, read in part as follows:

> . . . and this indictment further includes and charges Charles Dale Earl with the habitual offender allegations as set forth in the attachment hereto, which attachment is made a part hereof as though fully copies herein in words and figures, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

The attachment that the indictment referred to was titled, Continuation of Indictment Against the Defendant Charles Dale Earl, and read in part as follows:

> . . . and upon conviction the said defendant is hereby charged under MCA§ 99-19-81 to be sentenced to the maximum term of imprisonment prescribed for such felony, namely 7 years, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation; in that the said defendant shall, then and there have been convicted at least twice of a felony . . .

The attachment also listed the date and location of Earl's convictions for escape and uttering forgery. Earl's claim is without merit because the indictment properly charged Earl as a habitual offender before it was concluded by the phrase "against the peace and dignity of the State of Mississippi."

¶12. For the foregoing reasons Earl's conviction for the crime of burglary is affirmed.

¶13. **CONVICTION OF BURGLARY AND SENTENCE OF SEVEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED. SENTENCE OF SEVEN YEARS SHALL NOT BE REDUCED OR SUSPENDED NOR SHALL THE DEFENDANT BE ELIGIBLE FOR PAROLE OR PROBATION DURING THE TERM OF SAID SENTENCE. SENTENCE SHALL RUN CONSECUTIVE TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. DEFENDANT SHALL MAKE FULL RESTITUTION TO THE VICTIM IN THE AMOUNT OF FIVE HUNDRED DOLLARS ($500.00) AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, McRAE, ROBERTS, SMITH AND MILLS, JJ., CONCUR.**