United States Court of Appeals,

Fifth Circuit.

No. 95-50223

Summary Calendar.

Karl ECKER, Petitioner-Appellant,

v.

Wayne SCOTT, Director, Texas Department of Criminal Justice, Institutional Division; Dan Morales, Attorney General, Respondents-Appellees.

Nov. 21, 1995.

Appeal from the United States District Court for the Western District of Texas.

Before HIGGINBOTHAM, DUHÉ and EMILIO M. GARZA, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

A Texas jury convicted Karl Ecker of aggravated robbery and sentenced him to 25 years imprisonment. After exhausting his state remedies, Ecker filed a petition for habeas corpus relief. *See* 28 U.S.C. § 2254. The district court adopted a magistrate judge's recommendation that the application be denied. Ecker appeals. Before this court, Ecker raises only a Confrontation Clause challenge to his conviction. We affirm.

I

The magistrate found the following facts, which Ecker does not dispute. A man approached the cashier of a restaurant, motioned to a pistol in his belt, and demanded money from the cashier. The cashier, a Ms. Diltz, moved away, whereupon the man grabbed money from the register and ran outside to a car. The car, driven by a second man, drove off. Shortly thereafter, law enforcement

officials found a car nearby matching witnesses' descriptions of the car used in the robbery. A search of the car produced $700 cash and several letters addressed to Ecker. Ecker and a man named Martinez emerged from a nearby field. Law enforcement officials arrested them, then brought them back to the restaurant, where several witnesses identified Martinez as the man with the gun and Ecker as the driver of the car.[1]

Ecker's first trial ended in a mistrial, but we do not know why. At the first trial, Ms. Diltz testified and was cross-examined by Ecker's counsel. During the second trial, the prosecution called Ms. Diltz's physician. The physician stated that Ms. Diltz was receiving treatment for a bone cancer condition which had resulted in a hip fracture, and that she would be unable to testify for at least two weeks. The physician also testified that a greater than 50% chance existed that she would not be able to testify after three to four weeks. The physician further stated that if Ms. Diltz were forced to testify immediately, she would suffer a great deal of pain. On the basis of the physician's evidence, the court allowed the prosecution to read Mr. Diltz's testimony from the first trial into the record of the second.[2] Ecker argues that the state court's admission of Diltz's previous

---

[1]Ecker challenged the constitutionality of this identification procedure below, pointing out that at least one witness subsequently misidentified Martinez at the trial, and that the identifications of some of the other witnesses were suspect. Ecker has abandoned this challenge on appeal.

[2]Apparently, Ecker did not object to the introduction of this evidence during the trial. The state makes no argument to this court based on Ecker's failure to object.

testimony violated his rights under the Confrontation Clause.

## II

The Confrontation Clause expresses a preference for live testimony, which allows the jury to observe the witness's demeanor and the opposing counsel to cross examine the witness. *See California v. Green,* 399 U.S. 149, 157, 90 S.Ct. 1930, 1934, 26 L.Ed.2d 489 (1970). "There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal." *Pointer v. Texas,* 380 U.S. 400, 405, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965). Of necessity, courts have recognized that under certain circumstances the Confrontation Clause's preference for live testimony must yield to competing values, most importantly a state's interest in enforcing its criminal laws. *Mattox v. United States,* 156 U.S. 237, 243, 15 S.Ct. 337, 340, 39 L.Ed. 409 (1895). In particular, the Supreme Court has held that the traditional common law hearsay exception allowing use of prior testimony of a witness once subject to cross-examination, if the witness is unavailable, also applies in the Confrontation Clause context. *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); *see also* Fed.R.Evid. 804. In this case, Ecker does not dispute that Ms. Diltz was subject to cross-examination at her earlier trial. Accordingly, we focus our attention on the Texas trial court's finding that Ms. Diltz was sufficiently unavailable

3

to trigger the unavailable witness exception to the Confrontation Clause.

Relying on our decision in *Peterson v. United States,* 344 F.2d 419 (5th Cir.1965), Ecker argues that Ms. Diltz "was not dead, beyond the reach of process nor permanently incapacitated. She was simply unavailable at the time of trial because of [a medical condition]. Considering the seriousness of the charges[,] if the government desired to use [the witness's] testimony, it should have requested a continuance to a time when she could probably be present." 344 F.2d at 425 (alterations added). Ecker argues that, under *Peterson,* the trial court could not admit Ms. Diltz's prior testimony unless it found "that the witness is in such a state, either mentally or physically, that in reasonable probability he will never be able to attend the trial." 344 F.2d at 425. Ecker acknowledges that our subsequent decision in *United States v. Amaya,* 533 F.2d 188 (5th Cir.1976), *cert. denied,* 429 U.S. 1101, 97 S.Ct. 1125, 51 L.Ed.2d 551 (1977), phrased the standard in a somewhat different manner. In *Amaya,* we held that "[a]lthough the duration of an illness is a proper element of unavailability, the establishment of permanence as to the particular illness is not an absolute requirement. The duration of the illness need only be in probability long enough so that, with proper regard to the importance of the testimony, the trial cannot be postponed." 533 F.2d at 191. Ecker argues that even under this standard, nothing in the physician's testimony established that the trial could not be postponed for three or more weeks, at which time a substantial

4

probability (although not 50%) existed that Ms. Diltz would be able to give live testimony.

Our disagreement with Ecker begins with his interpretation of *Peterson* and *Amaya.* In our view, *Peterson* and *Amaya* suggest that the district court should engage in a multifactored analysis when deciding whether a witness's illness is sufficiently grave to allow use of prior testimony. We are guided in this inquiry by the Third Circuit's decision in *United States v. Faison,* 679 F.2d 292 (3d Cir.1982),[3] which identified a series of factors relevant to a district court's decision. In particular, the *Faison* court relied upon "[t]he importance of the absent witness for the case; the nature and extent of the cross-examination in the earlier testimony; the nature of the illness; the expected time of recovery; the reliability of the evidence of the probable duration of the illness; and any special circumstances counselling against delay." 679 F.2d at 297.

The most important of the *Faison* factors are the first two. A trial court deciding whether to allow use of prior testimony should carefully consider the role a particular witness plays in the prosecution's case, especially in light of the defense's trial strategy. Testimony providing cumulative evidence, or addressing a portion of the prosecution's case that the defense has not

[3]Although the *Faison* court expressly stated that its holding depended on an interpretation of Fed.R.Evid. 804, not of the Confrontation Clause, we agree with Judge Becker that the court's reasoning applies equally to the Confrontation Clause context, even though the Confrontation Clause may require a stronger showing of unavailability and reliability than does Rule 804. *See* 679 F.2d at 298 (Becker, J., concurring).

disputed or does not intend to dispute, might be admitted more readily than testimony not sharing these characteristics. *See, e.g., United States v. Atkins,* 618 F.2d 366, 373 (5th Cir.1980) (considering the parties' theories of the case in deciding whether to allow admission of prior testimony under Fed.R.Evid. 804). Furthermore, the trial court should evaluate the importance of the testimony in the light of the nature of the case; when witnesses tell conflicting versions of events, conventional wisdom suggests that a jury's evaluation of the demeanor of the witnesses could assist the fact-finding process. Similarly, in a close case, trial courts should take care that "the omission of live cross-examination ... before the new jury not tip the balance ... against [a] defendant." *Faison,* 679 F.2d at 297.

Moreover, trial courts should examine the extent of and motive for the cross-examination of the witness at the prior hearing or trial. Defense counsel may have less motive or opportunity to cross-examine a witness at a pre-trial proceeding than at a trial. In some circumstances, defense counsel has been appointed just before the hearing itself and is unfamiliar with the case. In cases of a state preliminary hearing designed to determined probable cause to hold the defendant for trial, cross-examination may not be as complete because such questioning can disclose defense strategy in a proceeding not designed to address the ultimate issue of guilt or innocence. Alternatively, the pre-trial hearing testimony may address a collateral issue, the nature of a search, for instance, and thus defense counsel's

6

cross-examination might not address a more substantive issue that happened to be included in the witness's direct testimony. In *Peterson,* for example, we refused to allow the prosecution to use a witness's testimony addressing tax evasion at a first trial to prove conspiracy at a second, on the grounds that defense counsel at the first trial had no motive to cross-examine the witness regarding the facts tending to show a conspiracy. 344 F.2d at 424. Especially in this last circumstance, trial courts should be wary of admitting testimony when defense counsel did not have sufficient motive or opportunity to cross-examine the relevant witness.

Courts should also consider the remaining *Faison* factors. If the witness is suffering from a chronic illness and is unlikely to recover within a reasonable length of time, a trial court should be inclined to admit the prior testimony. *See United States v. Bell,* 500 F.2d 1287, 1290 (2d Cir.1974). Courts should also consider the reliability of the evidence of the probable duration of the illness. *See United States v. Acosta,* 769 F.2d 721, 723 (11th Cir.1985) (holding that the district court did not abuse its discretion in ruling that defense counsel's bald and uncorroborated assertion that a witness was unable to attend a trial because of her child's illness was insufficient to constitute unavailability under Fed.R.Evid. 804). In the final analysis, the decision of whether a witness is unavailable for Confrontation Clause purposes requires an exercise of a trial court's sound discretion, considering the possibility of a continuance in light of the Confrontation Clause's interest in live testimony together with the

state and the defendant's joint interest in a prompt resolution of the criminal charges. Our "factors" are reminders for a trial court's exercise of judgment and discharge of duty to keep the trial fair.

Applying the these principles to this case, we hold that the admission of Ms. Diltz's prior testimony did not violate the Confrontation Clause.[4] Ms. Diltz's prior testimony occurred at a previous trial on the merits. The prosecution sought to use her testimony at the first trial to prove the same criminal offense at issue in the second. Defense counsel had a strong motive and a full opportunity to cross-examine Ms. Diltz fully. Moreover, Ms. Diltz's evidence was largely cumulative and addressed issues Ecker did not dispute at trial. Other witnesses identified both Martinez and Ecker, and at least one other witness saw Martinez's gun. Ecker's trial strategy was to deny knowledge that a robbery had taken place, not to contest the fact that a crime occurred or that Ms. Diltz identified Martinez correctly. Finally, a live expert witness, Ms. Diltz's physician, took the stand and was cross-examined by defense counsel on Ms. Diltz's unavailability to testify. Finally, we find unconvincing Ecker's assertion that Ms. Diltz might have been able to testify in four weeks.

AFFIRMED.

---

[4]The parties fight an initial battle over the standard of review in this case. We do not address this issue because our result would be the same regardless of the standard adopted.