UNITED STATES of America, Appellee,

v.

Henry Lee PRATT, Appellant.

No. 94–1369.

United States Court of Appeals, Eighth Circuit.

Submitted May 10, 1994.

Decided July 28, 1994.

**626**

Renee Schooley, Asst. Public Defender, East St. Louis, MO, argued, for appellant.

Richard Poehling, Asst. U.S. Atty., St. Louis, MO, argued, for appellee.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

BEAM, Circuit Judge.

A jury convicted Henry Lee Pratt of seventeen criminal counts including firearm records violations, firearm sale and delivery violations, cocaine distribution and carrying a firearm in relation to drug trafficking. He raises two contentions on appeal. First, that his prosecution should have been dismissed for "pre-accusatory" delay and second, that there was insufficient evidence to prove that he carried a firearm in relation to a drug trafficking offense. After analysis of the facts and the law applicable to these claims, we affirm.

## I. BACKGROUND

Because of the nature of the issues raised on appeal, we need not set forth the facts in great detail. However, the dates and circumstances of some of the activities are important.

In November of 1991, a firearm recovered at a crime scene was traced to Pratt, a federally licensed firearms dealer. As a result, agents of the Bureau of Alcohol, Tobacco and Firearms commenced an investigation. Inspection of his records, and those of wholesalers with whom Pratt dealt, revealed gross noncompliance with federal firearms requirements. And, it was determined that approximately ninety-six guns sold by Pratt had eventually been confiscated by various law enforcement agencies.

Detective Jones of the St. Louis Police Department assumed an undercover role. Posing as an UPS driver with felony convictions, Jones contacted Pratt. Pratt told him that he could not sell weapons directly to Jones but could sell them to a friend who could then give the guns to Jones.

On January 30, 1992, Jones met with Pratt to purchase a gun through Jones's purported girlfriend. Jones did not have his girlfriend's records for checking, as Pratt stated would be necessary. Pratt suggested that

they go to Illinois where purchases could be made without records. Over the next month, Jones purchased guns and ammunition which Pratt obtained in Illinois. In all, Jones testified that he purchased eleven guns from Pratt and Pratt obtained none of the required forms or permits from Jones for any of the firearms.

In the course of the gun commerce, Jones asked Pratt if he knew where to purchase cocaine. Pratt said that upon their return to St. Louis from Illinois, where they were at the time, he could help Jones. Pratt directed Jones to a St. Louis location where he obtained cocaine for Jones. This transaction occurred on February 7, 1992. On February 13, 1992, Jones contacted Pratt for more cocaine. They returned to the same location where Pratt procured a clear plastic bag with white powder which proved to be cocaine. On the ride away from this purchase, Pratt revealed to Jones that he thought Jones was making a lot of money on guns and drugs so he, Pratt, had brought along a gun. Pratt then pulled a box from his jacket. The box contained a gun. This, of course, was the firearm which led to the charge which Pratt now disputes.

## II. DISCUSSION

### A. Pre-accusatory Delay

Pratt was separately indicted for the February 7 drug sale on March 25, 1992. A second indictment, for the February 13 drug sale, was returned on August 12, 1993. It is this interim period that Pratt relies upon to claim prejudicial delay. He contends that the delay was used by the government to gain a tactical advantage in the later prosecution. This occurred, according to Pratt, because the second drug charge and the drug firearm offense were intermixed with the firearms record-keeping offenses, to his prejudice. The two drug offenses, a week apart, were completed well before the March 25 indictment for the first offense.

The due process clause of the Fifth Amendment protects a person's right to a prompt indictment. *United States v. Marion,* 404 U.S. 307, 324, 92 S.Ct. 455, 465, 30 L.Ed.2d 468 (1971); *United States v. Stier-*

*walt,* 16 F.3d 282, 284 (8th Cir.1994). A defendant asserting this protection bears, however, the burden of demonstrating actual prejudice resulting from the delay. *United States v. Bartlett,* 794 F.2d 1285, 1289 (8th Cir.), *cert. denied,* 479 U.S. 934, 107 S.Ct. 409, 93 L.Ed.2d 361 (1986).

Pratt filed a pretrial motion to dismiss for pre-accusatory delay. After a hearing before a United States Magistrate Judge, a recommendation of denial of the motion was forwarded to the district court. The district court adopted the magistrate judge's findings of fact and recommendations which stated, in part, "[i]t is doubtful that the defendant has met his burden of showing actual prejudice," *United States v. Pratt,* No. 4:93CR197 JCH, magis. mem. at 7 (E.D.Mo. Oct. 19, 1993), and that "[t]he evidence adduced ... does not support the [d]efendant's claim that the government intentionally delayed bringing [the] charges" for tactical advantage. *Id.* at 9. We agree with these findings and conclusions.

### B. Sufficiency of the Evidence

When reviewing the sufficiency of the evidence, the court must view the entire record in a light most favorable to the government. The court must draw from the facts all reasonable inferences in favor of the verdict and resolve all evidentiary conflicts in favor of the government. *United States v. Simms,* 18 F.3d 588, 592 (8th Cir.1994).

Using these rules as our guide, we have reviewed the record and find the evidence more than sufficient to support the conviction. Undercover Officer Jones testified that Pratt arranged, as a middleman, the purchase of one eighth ounce of cocaine on February 7, 1992. The price, according to Jones's testimony, was $350 for the cocaine and $50 for Pratt.

Then, on February 13, 1992, a second purchase occurred. In relation to this transaction, Jones testified, in part, as follows:

Q. What happened when he returned?
A. He came back, sat in the car and again give [sic] me a clear plastic bag that contained a white powder substance I believed to be cocaine.

Q. Now on this particular occasion, did you have any way of knowing whether or not Mr. Pratt was personally armed with a weapon?

A. No, I didn't.

Q. At some point in the discussion, did you find out, after the transaction took place, whether or not he was armed?

A. Yes, I did.

Q. How did you find out?

A. After he had, after we had made the narcotic transactions, I was driving him back home, and I told him how well I had been doing, making a lot of money, selling dope, and selling the guns, and I was in a position to purchase a lot more from him, and he told me that he figured I had been making a substantial amount of money, and he said, "That's why I brought this," and he reached into his jacket pocket and pulled out a box that had one of the 380s in it.

. . . .

Q. So in other words, the reason he has it, he tells you, is to protect you because you're gonna do the drug deal?

A. Right.

Q. From your vantage point, were you able to see a lot of the weapon or could you just see it lying in the box?

A. Just lying in the box.

Q. As we look at the weapon there, there's an extra clip. When you purchased these 380s, how many clips did you get with them?

A. Two.

Q. One is inside the gun, and you get an extra one?

A. Laying in the box.

. . . .

Q. You had no way of knowing because you couldn't see the clip, whether or not it was fully loaded?

A. No, I couldn't.

Q. But he's telling you that he brought it to protect the money, in case something went wrong with the drug deal?

A. Yes, he did.

Trial Transcript vol. 1 at 71–73.

Clearly, under our cases, the evidence was more than adequate to overrule Pratt's motion for acquittal based on insufficiency of the evidence.

## III. CONCLUSION

The district court did not err in overruling Pratt's motions for dismissal for pre-accusatory delay and for acquittal for insufficient evidence of possession of a firearm in relation to a drug trafficking crime. Accordingly, we affirm.