**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Edward H. KILGORE, Defendant–Appellant.**

No. 95–1564.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1995.

Decided June 21, 1995.

---

Virginia G. Villa, Minneapolis, MN, for appellant.

Carol A. Needles, Minneapolis, MN (David L. Lillehaug and Wendy M. Savakes, on the brief), for appellee.

Before BEAM, Circuit Judge, BRIGHT, Senior Circuit Judge and MURPHY, Circuit Judge.

BRIGHT, Senior Circuit Judge.

Edward Kilgore appeals from his conviction for embezzling mail in violation of 18 U.S.C. § 1709. Kilgore contends the district court[1] erred in denying his motion to suppress confessional statements made after postal inspectors allegedly promised Kilgore that he would not be arrested or go to jail. Kilgore claims that these promises amounted to official coercion, rendering his subsequent confession involuntary and thus violative of his fifth amendment due process rights. We affirm.

## I.

Edward Kilgore was a probationary letter carrier. When credit cards were stolen in the mail, suspicion fell on Kilgore. Postal inspectors set up a sting operation and Kilgore was caught placing two credit cards into the trunk of his personal car, instead of mailing them to their rightful owners. When Kilgore returned from his postal route, postal inspectors read Kilgore his *Miranda* rights and gave Kilgore a written waiver of rights form to sign. Kilgore read the first line out loud, establishing that he could read. Kilgore signed the form. Inspectors did not

---

1. The Honorable James M. Rosenbaum, United States District Judge for the District of Minnesota.

threaten Kilgore during the interview. Nor did they handcuff him. Moreover, Kilgore did not request an attorney or that the questioning cease.

During the interview, Kilgore initially denied knowledge of or involvement in credit card loss, despite being advised that he was observed stealing the cards. At this point, inspectors asked to search Kilgore's person. Kilgore emptied his pockets, wallet and took off his shoes. Inspectors found no evidence. They then asked to search Kilgore's private vehicle. Kilgore refused consent. At this point, pursuant to verbal authorization from the United States Attorney's office, Kilgore's personal vehicle was impounded until a search warrant could be secured. Kilgore, however, refused to surrender his car keys.

Soon thereafter, Kilgore asked to speak privately with one of the inspectors, Inspector Smith. Initially, Kilgore wanted assurance that he would not be arrested or go to jail overnight. Smith informed Kilgore that he would not be arrested that night, but Smith also informed Kilgore that his automobile would be impounded. When Kilgore learned that he could not take his car home, Kilgore began to cry and admitted taking the two credit cards but denied taking any others.

Within a few minutes, Kilgore again asked for reassurance that he would not have to spend the night in jail if he found the cards. Once again, the defendant was told that he was not going to jail that night regardless of whether or not the cards were found. The defendant then asked if his car would be taken if he found the credit cards. Inspector White responded that there would be no need for his car if the cards were found.

After that discussion, Kilgore and Inspector Smith went to Kilgore's private vehicle. Kilgore took a letter satchel from his trunk. Inside the satchel, Inspector Smith found the

two credit cards inside. Kilgore received permission to drive his vehicle home.

The government charged Kilgore with one count of embezzling mail matter in violation of 18 U.S.C. § 1709. Before trial, Kilgore moved to suppress his confessional statements and physical evidence. Magistrate Judge Franklin L. Noel filed a report, recommending that Kilgore's motions be denied. The district court adopted the magistrate judge's recommendation and denied Kilgore's motions to suppress. Following a jury trial, Kilgore was convicted and sentenced to fifteen months imprisonment, plus three years of supervised release. This appeal followed.

### II.

■ Kilgore's only contention on appeal is that the district court erred in denying his motion to suppress confessional statements made during questioning. The magistrate judge in assessing the voluntariness of Kilgore's *Miranda* waiver and the voluntariness of Kilgore's confession, reasoned that:

> Inspector White gave Kilgore his *Miranda* rights prior to beginning the interview. He gave Kilgore a warning and waiver of rights form. Inspector White had Kilgore read the first sentence aloud to show that he could read. Inspector White then read the form to Kilgore, first the warnings portion, which Kilgore signed, and then the waiver portion, which he also signed.... No evidence or testimony was presented showing that Kilgore asserted his *Miranda* rights before questioning, or that he made the statements involuntarily or under coercion.

*United States v. Kilgore*, No. 4–94–46, at 6 (D.Minn. June 8, 1994) (report and recommendation). The district court adopted this reasoning in denying the motion to suppress the confessional statements.

■ Kilgore essentially accepts that the waiver of his *Miranda* rights was voluntary,[2]

---

**2.** Kilgore attempts to attack the *Miranda* waiver retroactively by suggesting that the postal inspectors' assurances that he would not be arrested contradicted the substance of the *Miranda* warning itself and as such the warning was misleading.

This portion of Kilgore's claim is meritless. The adequacy of a *Miranda* warning and the voluntariness of a waiver of one's *Miranda* rights is only adjudged by the circumstances surrounding the warning and waiver *at the particular time* the warning and waiver were made. Circumstances occurring after a *Miranda* warning and

but contends that his subsequent confession was not. Specifically, Kilgore contends that the district court failed to take into account the coercive effect of the postal inspectors' assurances. According to Kilgore, he only confessed after (1) he was falsely promised that he would not go to jail, and (2) after he was told that he could retrieve his personal vehicle if he turned over the credit cards.

 "We review the issue of whether a confession was voluntary as a question of law subject to *de novo* consideration, but we review the district court's determination of the facts underlying its decision under the clearly erroneous standard." *United States v. Johnson*, 47 F.3d 272, 275 (8th Cir.1995).

 The appropriate test for determining the voluntariness of a confession is whether the confession was extracted by threats, violence, or direct or implied promises, such that the defendant's " 'will [was] overborne and his capacity for self-determination critically impaired.' " *Sumpter v. Nix*, 863 F.2d 563, 565 (8th Cir.1988) (quoting *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S.Ct. 1860, 1879, 6 L.Ed.2d 1037 (1961)). In making this determination, courts will inquire into the totality of the circumstances in assessing the conduct of law enforcement officials and the suspect's capacity to resist any pressure. *United States v. Meirovitz*, 918 F.2d 1376, 1379 (8th Cir.1990), *cert. denied*, 502 U.S. 829, 112 S.Ct. 101, 116 L.Ed.2d 71 (1991).

Kilgore's claim that postal inspectors promised that he would not go to jail *at any time* if he confessed to the crime has no support in the record. The record indicates, instead, that Kilgore received a promise that he would not go to jail *that evening*, not that he would not have to go to jail at some time in the future. Moreover, even if Kilgore was confused and confessed to the crime on the mistaken belief that he had been promised leniency (or even if he had been promised some form of leniency), this circumstance alone would not make Kilgore's confession involuntary. *Id.; Sumpter*, 863 F.2d at 565. Again, the test is whether Kilgore's " 'will

[was] overborne and his capacity for self-determination critically impaired.' " *Id.* (internal citation omitted). We conclude that it was not.

There exists no evidence of physical or emotional coercion, direct or indirect. The record, however, presents substantial evidence that Kilgore confessed in order to retain use of his personal vehicle and not spend the night in jail. Additionally, by confessing to the theft of two credit cards and reclaiming his car, Kilgore, according to the evidence, may have precluded postal inspectors from discovering his involvement in countless other thefts.

### III.

In sum, we do not believe Kilgore's " 'will [was] overborne and his capacity for self-determination critically impaired.' " *Sumpter*, 863 F.2d at 565 (internal citation omitted). The inspectors read Kilgore his rights; Kilgore waived his rights; and Kilgore voluntarily confessed. The government has thus established that Kilgore's confession satisfied the requirements of the fifth amendment. Accordingly, we affirm.

waiver can affect one's fifth amendment rights, but only insofar as they affect the voluntariness of the defendant's statements, not the voluntariness of his *Miranda* waiver.