_____

No. 96-1294
_____

Henry Lovejoy, Sr.,                     *
                                        *
           Appellant,                   *   Appeal From the United States
                                        *   District Court for the
     v.                                 *    District of Nebraska
                                        *
United States of America,               *
                                        *
           Appellee.                    *

_____

Submitted:  June 12, 1996

Filed:  August 7, 1996
_____

Before RICHARD S. ARNOLD, Chief Judge, F. GIBSON, Senior Circuit Judge,
     and KORNMANN,[*] District Judge.
_____

KORNMANN, District Judge.

     Appellant, Henry Lovejoy, Sr., was convicted of attempted sexual
abuse in violation of 18 U.S.C. § 2242(2)(A) and (B).  The District Court[1]
sentenced Lovejoy to 121 months imprisonment.  Lovejoy claims the District
Court erred in failing to find a violation of the Equal Protection Clause[2]
when the government exercised a peremptory challenge to exclude a black
person from the jury, in admitting as evidence statements made by the
victim's mother, and in failing to suppress incriminating statements
Lovejoy made to F.B.I. agents.  We affirm.

_____

     [*]The Hon. Charles B. Kornmann, United States District Judge
for the District of South Dakota, sitting by designation.

     [1]The Hon. Thomas M. Shanahan, United States District Judge for
the District of Nebraska.

     [2]See Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90
L.Ed.2d 69 (1986).

## I. Background

Lovejoy was charged with attempting to engage in a sexual act with his 13-year-old daughter. The victim is partially blind and cannot speak more than a few words. She cannot write, read braille, or communicate by sign language. She is unable to communicate with others in any meaningful fashion. The victim's mother, Lovejoy's common-law wife, must communicate with others for the victim.

On the night of the incident the victim went to sleep, as she often did, on the floor next to the bed of her mother and Lovejoy. Sometime during the night, the victim's mother placed the victim in the bed in which Lovejoy was sleeping because it was hot on the floor and the mother then slept on the floor. The victim's mother was awakened by noises coming from the bed. She halted Lovejoy's assault on the victim by punching Lovejoy in the stomach. She removed the victim from the room and preserved the victim's clothing as evidence. The next morning Lovejoy left the home and did not return.

The day after the incident, the mother reported what she had seen to the Legal Aid office. She further reported what she had seen to the tribal prosecutor, a tribal police officer, Child Protective Services, and to medical personnel who examined the victim.

## II. Discussion

### A. Batson Claim

Lovejoy argues the District Court erred in denying his Batson claim because the government exercised one of its peremptory challenges to strike the only African American person on the jury panel, in violation of Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

We review the District Court's decision on a Batson claim under the clearly erroneous standard. United States v. Brooks, 2 F.3d 838, 840 (8th Cir. 1993), cert. denied, --- U.S. ---, 114 S.Ct. 1117, 127 L.Ed.2d 427 (1994). The government claims Lovejoy did not establish a prima facie case of discrimination as required

for a successful Batson claim.  See Id. (defendant who raises a Batson claim is required to make a prima facie showing that the prosecutor exercised a peremptory challenge on the basis of race).  However, the prima facie issue is moot if the government offers race neutral reasons for a strike and the trial court rules on the ultimate question of intentional discrimination.  Davidson v. Harris, 30 F.3d 963, 965 (8th Cir. 1994), cert. denied, --- U.S. ---, 115 S.Ct. 737, 130 L.Ed.2d 639 (1995) (citing Brooks, 2 F.3d at 840).

In this case, the District Court found the government offered race neutral reasons in support of the strike.  See United States v. Atkins, 25 F.3d 1401, 1405 (8th Cir.), cert. denied, --- U.S. ---, 115 S.Ct. 371, 130 L.Ed.2d 322 (1994) (explaining that "[a] prosecutor's explanation for a strike is considered race neutral if the explanation is facially based on something other than the juror's race, i.e., if discriminatory intent is not inherent in the stated reason.").  To justify its strike, the government pointed to the testimony of the prospective juror at issue, Ms. Doris Ray.  Ms. Ray stated during voir dire that she had a nephew who was convicted of molesting a young child.  Although she felt he received a fair trial on the sexual molestation charge, she expressed some skepticism about the fairness of his trial in a subsequent prosecution that resulted in a life sentence; she thought additional evidence should have been admitted during his trial.

The District Court found the proffered reasons were not pretextual.  This decision is supported by the fact that the government struck a similarly situated white male, Donald Petermann.  Like Ms. Ray, Mr. Petermann had a relative who had been convicted and sentenced for sexual abuse.  We recently explained that a race neutral reason can be shown to be pretextual if the characteristics of a stricken minority panel member are shared by a white panel member who was not stricken.  See Davidson, 30 F.3d at 965.  Therefore, in determining whether a proffered reason for striking a minority prospective juror is pretextual, courts may

consider whether a similarly situated white prospective juror was stricken. Id.

We agree with the District Court that the reasons offered by the government for striking Ms. Ray were race neutral and not pretextual. Ms. Ray may have had some reservations about rules of evidence which exclude certain evidence in criminal trials and she may have had some sympathy for criminal defendants based upon her nephew's experiences. The District Court's denial of Lovejoy's Batson claim was not clearly erroneous.

B.  Claimed Hearsay Statements

Pursuant to Federal Rule of Evidence 803(4), the District Court admitted statements made by Christine Lovejoy (victim's mother) to a nurse. Although Ms. Lovejoy testified at trial and recanted her allegations, she told the nurse examining the victim a few days after the incident that she was awakened by sounds coming from the bed in which Lovejoy and the victim were sleeping, that she saw Lovejoy standing by the victim with an erection and that the victim's underwear was down and her tee shirt was up. Lovejoy contends the District Court abused its discretion in admitting the statements Ms. Lovejoy made to the nurse. Lovejoy claims the statements were not reasonably pertinent to diagnosis or treatment.

We evaluate first the District Court's decision to admit evidence under Rule 803(4) under the abuse of discretion standard. United States v. Yellow, 18 F.3d 1438, 1442 (8th Cir. 1994). To be admissible under Rule 803(4), the statement must satisfy two tests. First, the declarant's motive in making the statement must be consistent with the purpose of promoting treatment. United States v. Longie, 984 F.2d 955, 959 (8th Cir. 1993) (citing United States v. Renville, 779 F.2d 430, 436 (8th Cir. 1985)). Second, the content of the statement must be such as is reasonably relied upon by health care providers in treatment or diagnosis. Id.

Ms. Lovejoy made the statements while her daughter, who could not communicate orally or in writing on her own, was being examined by a medical professional in connection with allegations of sexual

-4-

abuse. The examination was done a few days after the incident. That the mother was concerned about what she observed during the night in question is shown by her actions in removing her daughter from the bedroom and segregating her clothing for delivery to authorities. The District Court did not abuse its discretion in deciding the mother's motive in making these statements was consistent with promoting the treatment of her daughter. The first test was met.

The statements at issue in this case are similar to the statements admitted under Rule 803(4) in <u>United States v. Iron Shell</u>, 633 F.2d 77, 82 (8th Cir. 1980), cert. denied, 450 U.S. 1001, 101 S.Ct. 1709, 68 L.Ed.2d 203 (1981). In <u>Iron Shell</u>, the treating physician was allowed to repeat statements which the victim made to him during a physical examination. <u>Id.</u> The physician repeated that the victim "had been drug into the bushes, that her clothes, jeans and underwear, were removed and that the man had tried to force something into her vagina which hurt." <u>Id.</u> We held that it was not an abuse of discretion to admit this testimony because it was reasonably pertinent to diagnosis or treatment. <u>Id.</u> at 83-85.

In the case at hand, the mother informed the nurse examining her daughter that she saw Lovejoy standing over the victim with an erection, although she did not say she saw him penetrate the victim. She also informed the nurse that the victim's underwear was down and her tee shirt was up. This information would aid the medical professionals examining the victim by "pinpointing areas of the body to be examined more closely and by narrowing [the] examination by eliminating other areas." <u>Id.</u> at 84. "Discovering what is not injured is equally as pertinent to treatment and diagnosis as finding what is injured." <u>Id.</u> Furthermore, Lovejoy did not introduce any evidence to contradict the examining nurse's testimony that it is important for the nurse to know the nature of the complaint since the nature of the examination may hinge thereon. A nurse often assists a physician in taking the history. The District Court did not abuse its discretion in deciding it was

reasonably pertinent to the victim's diagnosis and treatment to know the details surrounding the incident for which the victim was being examined. The second test was met.

The District Court did not abuse its discretion in admitting the mother's statements to the nurse examining the victim.

Even apart from Lovejoy's arguments as to Rule 803(4), the statements were also clearly admissible under Rule 803(24). As discussed above, the statements by the mother were trustworthy. The victim's mother's prior statements testified to by Ms. Hogue were offered as evidence of Lovejoy's conduct which is a material fact in this case. This testimony was more probative on the conduct of Lovejoy than any other evidence because the mother testified differently at trial, the victim could not testify and no other persons witnessed the attempted assault. Furthermore, the general purposes of the Rules of Evidence and the interests of justice will best be served by admission of the testimony into evidence.

C. Admission of Defendant's Statement

Lovejoy contends his written statement to F.B.I. agents following his arrest was given involuntarily because he was ill, needed medication and he made the statement under coercive conditions only after being threatened and then promised with release. We review for clear error the District Court's underlying factual determinations as to the voluntariness of a confession. United States v. Magness, 69 F.3d 872, 874 (8th Cir. 1995). Whether the confession was voluntary is a question of law and is subject to de novo consideration. Id.

The District Court found Lovejoy's statement was voluntary. Lovejoy did not miss any required doses of medication and did not state during the interview that he was in pain. The agents conducting the interview were dressed in civilian clothing with their weapons hidden, Lovejoy was cooperative during the interview, no threats or promises were made during the interview, the interview lasted approximately one hour and twenty minutes and Lovejoy never asked that the questioning stop or that he be allowed

to consult with an attorney. Our review of the record demonstrates that these factual determinations by the District Court are not clearly erroneous.

We recently explained that, "[t]he appropriate test for determining the voluntariness of a confession is whether the confession was extracted by threats, violence, or direct or implied promises, such that the defendant's will was overborne and his capacity for self-determination critically impaired." <u>United States v. Kilgore</u>, 58 F.3d 350, 353 (8th Cir. 1995) (citations omitted). Courts must evaluate the totality of the circumstances in making this determination. <u>Id.</u> Given the factual findings made by the District Court, we conclude that Lovejoy's statement was voluntary in that his "will was [not] overborne and his capacity for self-determination [was not] critically impaired." <u>Id.</u>

### III. Conclusion

For the reasons stated herein, we conclude the District Court properly denied Lovejoy's Batson claim, properly admitted the mother's statements and properly admitted Lovejoy's statements to the F.B.I. The decision of the District Court is affirmed. We express our thanks to appointed counsel for diligent public service.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT

-7-