_____

No. 95-3029EA
_____

United States of America,        *
                                  *
          Appellee,               *
v.                                *  Appeal from the United States
                                  *  District Court for the Eastern
Kevin Jacobs, aka Maurice         *  District of Arkansas.
Hawkins,                          *
                                  *
          Appellant.              *

_____

Submitted:  April 9, 1996

Filed:  October 3, 1996
_____

Before BEAM and MURPHY, Circuit Judges, BURNS,* District Judge.

_____

BURNS, District Judge.


    On April 7, 1995, a jury convicted Jacobs of conspiracy to commit bank robbery in violation of 18 U.S.C. § 371 and armed bank robbery in violation of 18 U.S.C. § 2113.  The district court[1] sentenced Jacobs to 60 months imprisonment on the first count and 300 months on the second count, the sentences to run concurrently and to be followed by a five-year term of supervised release.  Defendant was also ordered to pay restitution in the sum of $1,609.00.

    Jacobs appeals his conviction and seeks a new trial on the following grounds:

_____

    *The HONORABLE JAMES M. BURNS, United States District Judge for  the District of Oregon, sitting by designation.

    [1]The Honorable Donald J. Stohr, District Judge for the Eastern
District of Missouri.

1. The district court erred when it instructed the jury by reading an incorrect list of overt acts purportedly committed by defendant;

2. The district court erred when it admitted defendant's confession into evidence; and

3. The district court erred when it required defendant to conduct over the telephone a significant portion of his cross-examination of the government's main witness against him.

For the reasons articulated below, we AFFIRM Jacobs's conviction.

## JURY INSTRUCTIONS

Jacobs contends he was prejudiced when the district court misinstructed the jury by reading an incorrect list of overt acts purportedly committed by defendant. Jacobs further asserts he should have been permitted to reopen his defense following the court's error.

After the district court instructed the jury, it discovered its instructions included an incorrect list of overt acts that were drawn from one of the government's early drafts of the Indictment. The next morning, before closing arguments and the jury's deliberations began, the court informed the jury of its error and re-instructed the jury with the correct list of overt acts purportedly committed by Jacobs.

"[P]roperly objected to jury instructions" are reviewed for harmless error pursuant to Fed. R. Crim. P. 52(a). United States v. Ryan, 41 F.3d 361, 366 (8th Cir. 1994), cert. denied, 115 S.Ct. 1793 (1995). The test "for determining the adequacy of jury instructions is 'whether the instructions, when taken as a whole, adequately advise the jury of the essential elements of the offenses charged and the burden of proof required of the government.'" United States v. Bishop, 825 F.2d 1278 (8th Cir. 1987) (quoting United States v. Sherer, 653 F.2d 334, 337 (8th Cir.), cert. denied, 454 U.S. 1034 (1981)).

We are not persuaded by Jacobs's arguments that the court's initial error prejudiced him or that the court's subsequent action failed to cure the error. We find the district court's error was harmless "once remedial action was properly taken," United States v. Nabors, 762 F.2d 642, 648 (8th Cir. 1985), particularly since the district court cured its error before counsel began their closing arguments and before the jury began its deliberations.

Accordingly, we hold the district court's instructions, taken as a whole, adequately advised the jury of the essential elements of the offenses charged and the burden of proof required of the government.

## JACOBS'S CONFESSION

Jacobs asserts the district court erred when it admitted his confession because his confession was involuntary and coerced. Jacobs also contends his confession was inadmissible because during the interrogation he requested and was denied right to counsel in violation of the Sixth Amendment.

## Voluntariness of Jacobs's Confession

A district court's decision as to whether a defendant's confession was voluntary is reviewed de novo. United States v. Kilgore, 58 F.3d 350, 353 (8th Cir. 1995)(citing United States v. Johnson, 47 F.3d 272, 275 (8th Cir. 1995)).

The test for determining the voluntariness of a confession is "whether the confession was extracted by threats, violence, or direct or implied promises" to such a degree that defendant's will was overborne, United States v. Kilgore, 58 F.3d at 353, and "'his capacity of self-determination critically impaired.'" Sumpter v. Nix, 863 F.2d 563, 565 (8th Cir. 1988) (quoting Culombe v. Connecticut, 367 U.S. 568 (1961)). The court must "inquire into

3

the totality of the circumstances in assessing the conduct of law enforcement officials and the suspect's capacity to resist any of pressure." United States v. Kilgore, 58 F.3d at 353 (citations omitted).

The record reflects Jacobs was interrogated for approximately two hours by the Los Angeles police regarding his possible involvement in a murder that took place in California. Following that interrogation, he was interviewed by a special agent for the FBI. During the interview with the Los Angeles police, Jacobs said he was out of state at the time of the murder and, as part of his alibi, he stated that he committed armed bank robbery in Arkansas around the time of the murder. In his later interview with the FBI agent, Jacobs reiterated that he was in Arkansas robbing a bank around the time of the murder and also identified himself as one of the bank robbers in the bank surveillance photographs taken during the robbery. Jacobs now contends he confessed to the bank robbery and identified himself in the bank surveillance photographs only after the Los Angeles police "threatened" him by referring to the possibility that the murderer might be subject to the death penalty.

After hearing the testimony of the LAPD officer and the FBI agent who interviewed Jacobs, and after listening to the tape of the interview with the Los Angeles police,[2] the district court concluded Jacobs's confession was voluntary. We agree.

On the interview tape, Jacobs first brings up his participation in the Arkansas bank robbery on his own initiative long before the officers make any oblique references to the

---

[2]During the suppression hearing, the district court had access to the unredacted tape of the interview with the Los Angeles police. A redacted tape containing only Jacobs's confession and a transcript of that portion of the tape were later admitted into evidence during trial.

4

possibility that the person who committed the murder might be subject to the death penalty. Later in the interview, Jacobs voluntarily elaborates on his involvement in the bank robbery as a crucial part of his alibi.

After reviewing the record and listening to the interview tape, we find the totality of the circumstances does not demonstrate that Jacobs's will was overborne or that his capacity for self-determination was critically impaired. We hold, therefore, the district court did not err when it concluded Jacobs's confession was voluntary.

Admissibility of Jacobs's Confession

Jacobs also asserts he was denied his right to an attorney in violation of the Sixth Amendment even though he asked for one near the end of his interrogation by the LAPD[3] and, therefore, his confession should not have been admitted as evidence.

A district court's decision to admit or to suppress a defendant's confession is reviewed under a clearly erroneous standard. United States v. Meirovitz, 918 F.2d 1376, 1379 (8th Cir. 1990), cert. denied, 502 U.S. 829 (1991). We must affirm the district court's decision to admit defendant's confession unless its decision was "'unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, in light of the entire record, we are left with a firm and definite conviction'" that the district court made a mistake. Id. (quoting United States v. Jorgensen, 871 F.2d 725, 728 (8th Cir. 1989)).

At the beginning of the taped interview with the Los Angeles police, Jacobs was advised of and orally waived his Miranda rights.

---

[3]Jacobs does not contend he requested an attorney during his interview with the FBI agent.

Jacobs was then interviewed by an FBI agent, was again advised of his Miranda rights, and waived his rights both orally and in writing.

During his interview with the Los Angeles police, Jacobs said he would want a lawyer in the event he had to take a polygraph test. Jacobs did not request a lawyer at any other time. The district court found Jacobs's request for an attorney was limited to the specific circumstance of taking a polygraph test. Jacobs did not take a polygraph test; therefore, Jacobs was not denied his constitutional right to counsel.

After listening to the tape and reviewing the transcript of that portion of the tape, we agree with the district court; therefore, we find the statements made by Jacobs before and after his request were admissible as evidence. See Connecticut v. Barrett, 479 U.S. 523, 529 (1987) (defendant expressed a desire for the presence of counsel only in the event he had to make a written statement and, therefore, all of defendant's statements unconnected to making a written statement were admissible). See also United States v. Boyer, 914 F.2d 144, 146 (8th Cir. 1990) ("[A] limited invocation of the right to counsel does not preclude the admissibility of statements a defendant makes which fall outside the limited invocation."), cert. denied, 499 U.S. 908 (1991).

In summary, we find nothing in the record to indicate the district court erred when it concluded Jacobs's confession was voluntary. We also find the district court's decision to admit Jacobs's confession was supported by substantial evidence and based on a correct interpretation of the applicable law. We hold, therefore, the district court did not err when it admitted Jacobs's confession as evidence.

6

Jacobs also contends the district court erred when it required him to conduct by telephone a significant portion of his cross-examination of Kimberly Johnson, the government's main witness against him, in violation of his rights under the Confrontation Clause of the Sixth Amendment.[4]

Background

When Johnson was called as a witness at Jacobs's trial, she was pregnant and close to her delivery date. Her condition was such that she was too large to sit in the witness box in the usual manner and had to turn away from the jury. During cross-examination by Jacobs's counsel, the court called a recess to give Johnson a break. Although she indicated she wanted to finish testifying despite her discomfort, the court excused her temporarily and requested an ambulance. Johnson did not return to court after the noon recess. After the district judge excused the jury for the day, he advised counsel to consider what they would do if Johnson were unable to return to court. The court also informed defense counsel they would be permitted to read into the record portions of Johnson's pretrial testimony from the suppression hearing in place of cross-examination if Johnson were unable to return to the stand.[5]

The following day Johnson's doctor informed the court that

---

[4]Jacobs invokes both Fed. R. Crim. P. 26, which provides "the testimony of witnesses shall be taken orally in open court" in all trials, and the Confrontation Clause of the Sixth Amendment, which provides "the accused shall enjoy the right . . . to be confronted with the witnesses against him"; however, we find resolution of the constitutional question is sufficient to lay this issue to rest.

[5]At a later time during the trial, defense counsel rejected the court's offer.

Johnson would have to stay in the hospital for at least two more days and that she might be unavailable to testify during the following week. Jacobs's attorney asserted his cross-examination of Johnson was critical to Jacobs's defense because Johnson was the government's primary witness against Jacobs. Defense counsel pointed out he had not reached the crux of his cross-examination when the court excused Johnson.[6] Defense counsel also vigorously argued it was crucial for the jury to have the opportunity to observe Johnson's demeanor during cross-examination in order to properly evaluate her credibility, particularly in light of her prior inconsistent statements and the fact that Johnson's testimony was the core of the government's case against Jacobs. Jacobs's counsel requested a continuance until at least the following week. In spite of counsel's objections and request for a continuance, the court ruled Johnson would be cross-examined by telephone if she were still unavailable that afternoon.

When court reconvened, the remainder of Jacobs's cross-examination of Johnson was conducted over the telephone. Johnson was on the telephone in the hospital with her lawyer present; the trial judge, defendant, and counsel were in the judge's chambers; and the jurors were seated in the jury box listening to Johnson's testimony through speakers in the courtroom.

The Law

The Confrontation Clause of the Sixth Amendment "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." Coy v. Iowa, 487 U.S. 1012, 1016

---

[6]We do not have an accurate log of the time Jacobs spent cross-examining Johnson; however, the court reporter's notes and the record reflect Jacobs's cross-examination of Johnson in open court filled approximately 13 transcribed pages and his cross-examination of Johnson by telephone consisted of approximately 20 transcribed pages.

8

(1988). The basic purpose of the Confrontation Clause is "to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact," Maryland v. Craig, 497 U.S. 836, 845 (1990), and by giving defendant the "opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief." Mattox v. United States, 156 U.S. 237, 242-43 (1895). Face-to-face confrontation ensures "'the integrity of the fact-finding process.'" Coy v. Iowa, 487 U.S. at 1020 (citing Kentucky v. Stincer, 482 U.S. 730, 736 (1987)).

Although the Confrontation Clause embraces the principle that the physical presence of witnesses in a criminal trial and the opportunity for the fact-finder to observe the demeanor of witnesses are elements that ensure the reliability of evidence admitted against an accused, the Clause does not guarantee "criminal defendants the absolute right to a face-to-face meeting with witnesses against them at trial." Maryland v. Craig, 497 U.S. at 844, 846. The preference established by precedent for face-to-face confrontation at trial, Ohio v. Roberts, 448 U.S. 56, 63 (1980), has occasionally given way. Maryland v. Craig, 497 U.S. at 849-50. Specifically, the Supreme Court has carved out a narrow exception to a criminal defendant's right to face-to-face confrontation when (1) "denial of such confrontation is necessary to further an important public policy" and (2) the necessities of the case require same. Id. at 850. See also United States v. Benfield, 593 F.2d 815, 821 (8th Cir. 1979) (exceptions to the Confrontation Clause "should be narrow in scope and based on necessity or waiver"). The trial court is required to identify the important state interest and to hear evidence to determine the necessities of the specific case before abridging a defendant's right to confrontation. Maryland v. Craig, 497 U.S. at 855-58.

9

Discussion

1.   Public Policy

The district court did not identify any state interests that compelled it to go forward with the cross-examination of Johnson via telephone.  The court may have been concerned about the efficient use of court resources and/or defendant's rights under the Speedy Trial Act; however, we can only speculate in the absence of the court's identification of same.  Mere speculation is insufficient to justify abridgement of defendant's constitutional right to confront his accuser face-to-face in the jury's presence.

2.   Necessities of the Case

A defendant's rights under the Confrontation Clause may be abridged if a witness is truly unavailable. See e.g., United States v. Kelly, 892 F.2d 255, 261 (3d Cir. 1989) (videotaped depositions of foreign witness taken without defendant's presence admissible because witness was unavailable to testify at trial), cert. denied, 497 U.S. 1006 (1990); United States v. Mueller, 74 F.3d 1152, 1156-57 (11th Cir. 1996)(depositions of foreign witness admissible because the witness was unavailable to testify at trial).

When a witness is unavailable due to illness, the Third, Fifth, and Sixth Circuits have concluded the district court must determine the necessities of the specific case by weighing "the importance of the absent witness for the case; the nature and extent of the cross-examination . . . ; the nature of the illness; the expected time of recovery; the reliability of the evidence of the probable duration of the illness; and any special circumstances counselling against delay." United States v. Faison, 679 F. 2d 292, 297 (3d Cir. 1982).  See also Ecker v. Scott, 69 F.3d 69, 72 (5th Cir. 1995) (the court should "engage in a multifactored analysis"

that considers the Faison factors); Stoner v. Sowders, 997 F.2d 209, 212 (6th Cir. 1993) ("When the question is one of the health of the witness, there must be 'the requisite finding of necessity' which is 'case specific' in order to dispense with confrontation in open court.") (quoting Maryland v. Craig, 497 U.S. at 855). We find the approach of our sister circuits worthy of emulation.

Among other things, the district court should have made specific inquiry into the severity and duration of Johnson's "poor health." Stoner v. Sowders, 997 F.2d at 212. The district court did not make the requisite finding that Johnson was sufficiently unavailable to trigger an exception to the Confrontation Clause; i.e., Johnson "was not dead, beyond the reach of process nor permanently incapacitated." Ecker v. Scott, 69 F.3d at 71. Johnson was, in fact, only temporarily unavailable for cross-examination because of her medical condition. Nothing in the record indicates she would have been unlikely to recover in a short time or would have been unable to appear in open court within a reasonable time.

Johnson was the government's primary witness against Jacobs. Although the jury had the opportunity to observe Johnson's demeanor before she was excused,[7] a significant portion of Jacobs's cross-examination did not take place in the presence of the jury. In fact, counsel, defendant, and jurors were all denied the opportunity to observe the facial and physical expressions that accompanied Johnson's responses to the greater part of Jacobs's cross-examination. As we have noted before, "in some undefined but real way recollection, veracity, and communication are influenced

_____

[7]The jury had the opportunity to observe Johnson's demeanor during direct examination by the government, cross-examination by one codefendant, and the partial cross-examination by Jacobs before Johnson was excused.

11

by face-to-face challenge." United States v. Benfield, 593 F.2d at 821. Jacobs was deprived of this critical face-to-face challenge in the presence of the jury.

Jacobs's right to have the jury evaluate Johnson's demeanor during cross-examination was an important protected interest. Mattox v. United States, 156 U.S. 237, 242-43 (1895). Although Jacobs's arguments might wield less power if the jurors, defendant, and defense counsel were able to view by video monitor the witness's demeanor and "body language" that accompanied her responses, we are reluctant to tolerate even these technological variations on "face-to-face" confrontation except when necessity or waiver have been demonstrated. See e.g., United States v. Benfield, 593 F.2d at 821; Lam v. Iowa, 860 F.2d 873, 874 (8th Cir. 1988) (admission of videotape of witness's deposition insufficient to overcome constitutional violation of defendant's right to confront his accuser face-to-face in the presence of the jury because the witness's presence could have been obtained), cert. denied, 490 U.S. 1069 (1989).

In conclusion, the circumstances of this case do not persuade us we should endorse cross-examination via telephone either generally[8] or in this particular criminal case. We hold, therefore, the district court erred when it substituted cross-examination via telephone for in-person cross-examination in open court without identifying the important state interests and hearing evidence to determine the specific necessities of this case that justified abridgement of Jacobs's constitutional right to confront his accuser face to face.

_____

[8]In Murphy v. Tivoli, we held that telephone testimony does not qualify as testimony taken in "open court" even though we acknowledged that a party may read into the record a witness's deposition taken by telephone if that witness was truly unavailable to testify at trial. 953 F.2d 354, 359 (8th Cir. 1992).

12

Harmless Error Analysis

All errors of constitutional dimension do not automatically call for reversal. Chapman v. California, 386 U.S. 18, 23 (1967). We review Confrontation Clause errors under the Chapman harmless- error rule.[9] Coy v. Iowa, 487 U.S. at 1021. See also United States v. Simmons, 964 F.2d 763, 770 (8th Cir.), cert. denied, 506 U.S. 1011 (1992).

To hold a federal constitutional error harmless, we must declare "the error was harmless beyond a reasonable doubt." Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986). See also Lufkins v. Leapley, 965 F.2d 1477, 1481 (8th Cir.), cert. denied, 506 U.S. 895 (1992). Whether the error was harmless beyond a reasonable doubt "must . . . be determined on the basis of the remaining evidence" rather than whether the jury's assessment or the witness's testimony would have changed in the absence of the error. Coy v. Iowa, 487 U.S. at 1021-22.

During his interviews with the LAPD and the FBI in California, Jacobs confessed to the bank robbery in Arkansas. Jacobs also identified himself in the bank surveillance photograph during his interview with the FBI agent. This Circuit has consistently followed Wong Sun v. United States, 371 U.S. 471, 489 (1963), in which the Supreme Court held "the guilt of an accused may stand on nothing more than the defendant's . . . uncorroborated confession" if the state "has established injury to person or property caused by the criminal acts of some person." Lufkins v. Leapley, 965 F.2d at 1482 (citing United States v. Opdahl, 610 F.2d 490, 493 (8th

_____

[9]Although the government did not raise the issue of harmless error, we may undertake such analysis sua sponte when we think "the finding of harmlessness is beyond reasonable argument" and our review of the straightforward record "will prevent an expensive and futile remand." Lufkins v. Leapley, 965 F.2d 1477, 1481-82 (8th Cir.), cert. denied, 506 U.S. 895 (1992).

Cir. 1979), <u>cert.</u> <u>denied</u>, 444 U.S. 1091 (1980)).  In this instance, however, Jacobs's conviction stands on much more than his confession.

Johnson was an important witness for the government.  In the presence of the jury during direct examination, cross-examination by one defendant, and the part of Jacobs's cross-examination conducted in open court, Johnson essentially corroborated several material elements of Jacobs's confession: She was the friend Jacobs said he knew in Arkansas before the bank robbery; she was the friend Jacobs said he was staying with in Arkansas at the time of the bank robbery; and she was the woman Jacobs referred to in his confession who was arrested with the stolen money in the trunk of the car she was driving.  Johnson also readily identified Jacobs as one of the robbers in the bank surveillance photograph.

In his cross-examination of Johnson in open court, Jacobs primarily attacked Johnson's credibility by pinpointing inconsistencies between her testimony and earlier statements she made to police.  The portion of cross-examination conducted by telephone was cumulative in that it consisted of more of the same; i.e., Jacobs's cross-examination over the telephone was essentially a continuation of Jacobs's challenge to Johnson's credibility and centered on showing inconsistencies between the statements Johnson made before and during trial relating to details about the sequence of events leading up to and following the bank robbery.  None of Johnson's testimony, either in court or via telephone, contradicted or cast doubt on the material elements of Jacobs's confession.

In the absence of any of Johnson's testimony, the remaining evidence was still more than "minimally sufficient" to support Jacobs's conviction. <u>Lam v. Iowa</u>, 860 F.2d at 876.  One of the Los Angeles police officers and the FBI agent, who each conducted separate interviews with Jacobs, testified to the fact that Jacobs voluntarily confessed and that he offered his confession as part of

14

his alibi for the murder in California.  The jury heard the redacted tape and read the transcript of Jacobs's confession.  A defendant's confession "has an extraordinary impact on a finder of fact." Lufkins v. Leapley, 965 F-2d at 1482-83 (citing generally Arizona v. Fulminante, 499 U.S. 285 (1991)).  "[W]hen a defendant admits a crime, the jury will be tempted to rest its decision on that evidence alone."  Id. The jury in this case, however, had more than Jacobs's confession.  The testimony of the FBI agent also established that Jacobs identified himself in the bank surveillance photograph during his interview with the agent.  Two employees of the bank present at the time of the robbery also identified Jacobs in open court as one of the bank robbers.

After reviewing the record as a whole, we are convinced beyond a reasonable doubt the violation of Jacobs's rights under the Confrontation Clause was harmless error.

### CONCLUSION

Based on the foregoing, we AFFIRM Jacobs's conviction.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

15