**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

No. 97-1255NE

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United States |
| | * | District Court for the District of |
| v. | * | Nebraska. |
| | * | |
| Cardell Larry, also known as Larry | * | [PUBLISHED] |
| Cardell, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 12, 1997
Filed: October 6, 1997

_____

Before FAGG, WOLLMAN, and LOKEN, Circuit Judges.

_____

PER CURIAM.

After Omaha, Nebraska police officers received word of 911 calls reporting a drive-by shooting, an officer began to follow a car matching the description of the vehicle involved in the shooting. The officer stopped the suspect car when its driver, Cardell Larry, exceeded the speed limit. On learning Larry was driving with a suspended license, the officer arrested him. Another officer saw ammunition scattered around inside the car in plain view. The officer searched the car and found three firearms and a quantity of ammunition. At the police station, more ammunition was discovered in Larry's possession, and Larry told police he knew there was a sawed-off

shotgun in the car. At trial, an agent of the Bureau of Alcohol, Tobacco and Firearms (ATF) testified the ammunition seized from the car and from Larry had been manufactured outside Nebraska. Based on this evidence and an earlier Georgia felony conviction, Larry was found guilty of being a felon in possession of ammunition. See 18 U.S.C. § 922(g)(1) (1994). Larry appeals, challenging his conviction and sentence. We affirm.

To begin, Larry's challenge to the constitutionality of 18 U.S.C. § 922(g)(1) is foreclosed by our decision in United States v. Bates, 77 F.3d 1101, 1103-04 (8th Cir.), cert. denied, 117 S. Ct. 215 (1996). Next, Larry contends his indictment should have been dismissed because of preindictment delay. About one year passed between Larry's arrest and indictment, and in the meantime the tapes of the 911 calls were destroyed. Larry claims that because the tapes may have shown police lacked reasonable suspicion for an investigative stop, their destruction prejudiced his defense. Larry failed to establish the required prejudice, however, see United States v. Pratt, 31 F.3d 625, 627 (8th Cir. 1994), because the officer could have stopped Larry for the speeding violation alone, see United States v. Pollington, 98 F.3d 341, 342 (8th Cir. 1996).

After stopping Larry, the officer arrested him for driving with a suspended license, and so the ensuing vehicle search was a lawful search incident to arrest. See United States v. Snook, 88 F.3d 605, 608 (8th Cir. 1996). Alternatively, when the assisting officer saw ammunition in the car, he had probable cause to believe the car contained evidence of the earlier drive-by shooting, justifying a warrantless search. See United States v. Brown, 49 F.3d 1346, 1350 (8th Cir. 1995). Consequently, the district court correctly denied Larry's motion to suppress ammunition seized in the course of this search.

Larry next contends the Government's witness from the ATF was not qualified as an expert on ammunition manufacture, and so the agent's opinion that Larry's

ammunition had been made outside Nebraska should have been excluded. The agent had extensive firearms training and experience, and access to the ATF's data on ammunition manufacturers. Despite the agent's lack of specialized training in ammunition identification, we conclude the district court acted within its discretion in allowing the challenged testimony, see United States v. Rose, 731 F.2d 1337, 1346 (8th Cir. 1984), which sufficiently established the ammunition's interstate connection. The evidence was also sufficient to establish Larry's underlying felony conviction. The record shows Larry was convicted of a Georgia felony on a counseled plea of guilty and sentenced to three years' confinement.

Turning to Larry's sentence, Larry argues the district court incorrectly relied on Larry's statement to the police that he knew there was a sawed-off shotgun in his car. The district court found the statement was made after the police promised Larry he would be released from jail and would not be prosecuted for the drive-by shooting. Concluding the promise of no prosecution rendered Larry's statement involuntary, the district court suppressed the statement at trial. Nevertheless, citing section 6A1.3(a) of the Sentencing Guidelines, the district court took Larry's suppressed statement into account in arriving at Larry's base offense level. See U.S. Sentencing Guidelines Manual § 6A1.3(a), p.s. (1995) (permitting sentencing court to consider sufficiently reliable information "without regard to its admissibility under the rules of evidence"). We need not decide whether section 6A1.3(a) permits the sentencing court to consider involuntary statements suppressed on constitutional grounds because Larry's statement was voluntary.

Although the district court's factual findings stand unless clearly erroneous, we review the district court's decision on the issue of voluntariness de novo, and the voluntariness of Larry's statement depends on whether his "will was overborne and his capacity for self-determination critically impaired." United States v. Kilgore, 58 F.3d 350, 353 (8th Cir. 1995) (alteration and internal quotations omitted). In making this assessment, it is well established that we look to the totality of the circumstances and

consider both "the conduct of law enforcement officials and [Larry's] capacity to resist any pressure." Id. Here, Larry was thirty-one years old, he had a high school equivalency diploma, he had an extensive criminal history with thirteen earlier convictions, and his remarks to the police show he was not particularly susceptible to police pressure. Larry was held overnight after he was booked on four felony charges stemming from the drive-by shooting. The next day, the police informed Larry of his Miranda rights, and then told Larry he would be released from jail and not prosecuted for the drive-by shooting if he told them what he knew about the shooting. Larry did so, making along the way his statement about the sawed-off shotgun. As promised, Larry was then released and was not prosecuted on the felony charges. Larry was neither intimidated nor threatened during his brief questioning.

Instead of treating the promised nonprosecution as one of the circumstances to be considered in assessing the conduct of the police and the characteristics of the accused, see Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973), the district court ruled on a per se basis that "a confession induced by a promise that there will be no prosecution is not voluntary." In doing so, the district court misapplied the Schneckloth rule and ignored our earlier holdings. See Kilgore, 58 F.3d at 353 (promise of leniency does not in itself make confession involuntary); Tippitt v. Lockhart, 859 F.2d 595, 597 (8th Cir. 1988) (promise of nonprosecution does not in itself make statement involuntary). After considering Larry's capacity to resist police pressure and the nature of the interrogation, we conclude Larry was neither coerced nor was his will overborne, and his statement was voluntarily given. Thus, the district court properly relied on Larry's statement at sentencing.

Finally, the district court's refusal to grant Larry's motion for a downward departure is unreviewable. The district court understood it had authority to depart downward and simply decided a departure was not warranted. See United States v. Rawe, 21 F.3d 850, 852 (8th Cir. 1994) (per curiam).

-4-

We affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-5-